[Civ. No. 13122.   First Dist., Div. Two.   Aug. 22, 1946.]

L. T. WILLIG, Appellant, v. LAURANCE GOLD et al., Respondents.

Hubbard & Hubbard for Appellant.

Franklyn M. O'Brien, in pro. per., Paul W. McComish and Charles M. Stark for Respondents.

DOOLING, J.—The appellant, Willig, had been the owner of a business in San Francisco which he wanted to sell. Respondent Gold learned of this and negotiated with Willig to buy the business for himself. These negotiations having failed he undertook to secure a purchaser and succeeded in selling the business to a corporation for over $100,000. Gold demanded a much larger commission but was paid by Willig for his services as broker $3,000.

During the course of their negotiations Willig had disclosed to Gold the volume of his business over a certain period. Willig was insured by Rathbone, King & Seeley with the premium payments measured by the volume of business done by Willig. Angered at Willig's refusal to pay him more than $3,000 for his services Gold, through his attorney, entered into a written agreement with Rathbone, King & Seeley, for a percentage of their recovery, to disclose information to Rathbone, King & Seeley that one of their assureds had misrepresented the amount of premimus due to them. Pursuant to this agreement Gold gave to Rathbone, King & Seeley the information that he had obtained from Willig. Rathbone, King & Seeley filed a suit for unpaid premiums against Willig which was compromised for $30,000. Several parties having demanded all or part of the $7,215.49 which represented the percentage of the $30,000 payable to Gold under their written agreement with him, Rathbone, King & Seeley interpleaded the various claimants and paid the money into court.

Willig filed a complaint in intervention asking 1. for the recovery of the $3,000 paid to Gold as a commission on the ground that the transaction was illegal because Gold was not licensed as a business opportunity broker (Bus. & Prof. Code, div. 4, pt. 1, ch. 4) ; and 2. for the recovery of the entire sum of $7,215.49 on the theory that it was the fruits of a breach of the confidential relation existing between agent and principal.

The court denied Willig recovery on both grounds and Willig appeals.

The denial of recovery of the $3,000 commission was on the ground that both parties were *participes criminis* and *in pari delicto*.

The evidence supports the trial court's determination that in paying the $3,000 to Gold Willig was guilty of a violation of that part of section 10259 of the Business and Professions Code which reads:

"It is a misdemeanor, punishable by a fine of not exceeding fifty dollars ($50) for each offense, for any person, whether obligor, escrow holder or otherwise, to pay or deliver to anyone a compensation for performing any of the acts within the scope of this chapter, who is not known to be or who does not present evidence to such payor that he is a regularly licensed business opportunity broker at the time such compensation is earned."

The following quotation from Willig's testimony makes clear that he paid the $3,000 without requiring Gold to "present evidence to such payor that he is a regularly licensed business opportunity broker" as required by the quoted section:

"Q. Did he tell you he had a license as a business opportunity broker? A. He didn't say he had a license, he said he was a business opportunity broker.

"Q. Did he tell you he had a license? A. No, he did not.

"Q. Did you ask him if he had a license? A. No, I did not."

■ Appellant argues that despite his violation of the express prohibition which the law placed on him not to pay a commission without requiring Gold to present evidence that he held a license, he is entitled to recover because, he argues, he was not *in pari delicto* with Gold. In this regard he points to section 10260 Business and Professions Code:

"Any person acting as a business opportunity broker or business opportunity salesman without a license shall, upon conviction thereof, if a natural person, be punished by a fine of not to exceed five hundred dollars ($500), or by imprisonment in the county jail for a term not to exceed six months, or by both such fine and imprisonment in the discretion of the court; or if a corporation, be punished by a fine of not to exceed five thousand dollars ($5,000)."

Because of the heavier penalty imposed on the unlicensed broker by this section he asserts that the principal making a payment to an unlicensed broker in violation of section 10259 is not *in pari delicto* with the broker who violates section 10260.

Appellant cites no case holding that a person who violates a penal statute which lays an express prohibition upon him is not *in pari delicto* with the other party to the transaction merely because the law imposes a heavier penalty upon the other. He cites and relies upon *Tatterson* v. *Kehrlein*, 88

Cal.App. 34, which contains this statement at pages 49-50 [263 P. 285]:

"The penalties prescribed by the Corporate Securities Act being all laid on the seller and none on the buyer, and the statute being for the benefit and protection of buyers, the parties are not *in pari delicto,* and the buyer may have judgment for the money paid out by him under the illegal contract, and may have the contract, the stock certificates and promissory note given in payment of such stock canceled (*Reilly* v. *Clyne,* 27 Ariz. 432 [40 A.L.R. 1005, 234 P. 35]; *Karamanou* v. *Green Co.,* 80 N.H. 420 [124 A. 373]; *Vercellini* v. *U. S. I. Realty Co.,* 158 Minn. 72 [196 N.W. 672]; *Edwards* v. *Ioor,* 205 Mich. 617 [15 A.L.R. 256, 172 N.W. 620]; *Landwehr* v. *Lingenfelder* (Mo.App.), [249 S.W. 723]; *Reno* v. *American Ice Machine Co., supra* [72 Cal.App. 409 (237 P. 784)]). The foundation of the right of the plaintiff to recover in these cases, although a party to the illegal contract, is the rule of the common law declared by Lord Mansfield in *Browning* v. *Morris,* 2 Cowp. 790, 98 Eng. Reprint, 1364 (quoted from in the Arizona and New Hampshire cases, *supra*), as follows: 'The rule is, *in pari delicto potior est conditio defendantis.* (sic) . . . Where the contract is executed, and the money paid *in pari delicto,* this rule certainly holds . . . and the party who has paid it cannot recover it. For instance, in bribery, if a man pays a sum of money by way of a bribe, he can never recover it in an action, because both plaintiff and defendant are equally criminal. But where contracts or transactions are prohibited by positive statutes for the sake of protecting one set of men from another set of men—the one, from their situation and condition being liable to be oppressed or imposed upon by the other—there the parties are not *in pari delicto;* and, in furtherance of these statutes, the person injured, after the transaction is finished and completed, may bring his action and defeat the contract.' In *Reilly* v. *Clyne, supra,* it is said: 'The complaining party is especially protected by the law where the agreement is not illegal *per se* but is merely prohibited. . . . The purpose of the "Blue Sky Law" is to protect the public against imposition. The defendant is one of the public for whose benefit the law was enacted,' and in *Irwin* v. *Curie,* 171 N.Y. 409 [58 L.R.A. 830, 64 N.E. 161], the court says: 'It is safe to assume that whenever the statute imposes a penalty upon one party, and none upon the other, they are not to be regarded

as *par delictum,'* and in *Edwards* v. *Ioor, supra,* the court uses this language: 'It is very material that the statute itself, by the distinction it makes, has marked the criminal, for the penalties are all on one side.' "

This test for determining whether the parties to a transaction which violates a statute are *in pari delicto* is of ancient lineage, stemming from the following statement of Lord Mansfield in *Browning* v. *Morris, supra,* 2 Cowp. 790, 793:

"And it is very material that the statute itself, by the distinction it makes, has marked the criminal: For the penalties are all on one side."

This case is often cited and the test above quoted frequently applied. (See in addition to the cases cited in the quotation from *Tatterson* v. *Kehrlein, supra; Randall* v. *California L. B. Syndicate,* 217 Cal. 594, 597 [20 P.2d 331]; *McClory* v. *Dodge,* 117 Cal.App. 148, 152 [4 P.2d 223]; *White* v. *Franklin Bank,* 39 Mass. (22 Pick.) 181; *Tracy* v. *Talmage,* 14 N.Y. 162 [67 P. 132]; *Smart* v. *White,* 73 Me. 332 [40 Am.Rep. 356]; *Lester* v. *Howard Bank,* 33 Md. 558 [3 Am.Rep. 211]; *Bateman* v. *Robinson,* 12 Neb. 508 [11 N.W. 736]; *Edgerly* v. *Hale,* 71 N.H. 138 [51 A. 679]; *Mason* v. *McLeod,* 57 Kan. 105 [45 P. 76, 57 Am.St.Rep. 327, 41 L.R.A. 548]; *Stansfield* v. *Kunz,* 62 Kan. 797 [64 P. 614]; *United Bank & Trust Co.* v. *Joyner,* 40 Ariz. 229 [11 P.2d 829]; *Thomas* v. *City of Richmond,* 12 Wall. (79 U.S.) 349 [20 L.Ed. 453].)

In the last cited case the Supreme Court of the United States said (12 Wall. (79 U.S.) at p. 356):

"But if the parties are *in pari delicto,* as . . . if the receiving as well as passing or issuing the bills is forbidden by law, then the holder is without legal remedy, and the parties are left to themselves."

For reasons of public policy which it must be presumed to have considered adequate the Legislature has seen fit to make guilty of a criminal act the one paying a commission under the circumstances shown here. It has singled out the payor by section 10259. So far as the payment of a commission is concerned the Legislature has by that section placed the penalty solely upon the payor, and he is the one whom the Legislature, in the language of Lord Mansfield, "has marked the criminal." In the attempt to prove his right to recover the commission Willig was compelled to disclose that in making that very payment he violated an express penal provision. In the absence of some compelling public

policy (which we cannot discover here) no cause of action can be grounded upon appellant's own violation of an explicit statutory prohibition placed upon him. (6 Cal.Jur. 104-105.)

Appellant's second claim is somewhat startling. He argues in effect that because of the agency relation which had previously existed Gold was under a duty not to disclose to Rathbone, King & Seeley that appellant had made false returns to them and as a result paid them a smaller premium than they were entitled to receive. He cites no case, and we are sure that none can be found, that an agent is under a legal duty not to disclose his principal's dishonest acts to the party prejudicially affected by them. He does make an effort to show that there is no evidence in the record to support a finding that appellant did make false returns. The record shows that after suit brought and an audit of his books appellant paid Rathbone, King & Seeley $30,000 in settlement of their claim. It also shows that the action was based on the allegation that Willig had made false returns as the basis of premium payments, and a former employee of Willig testified: "Mr. Bittel told Mr. Willig that the company wanted to audit the books. Mr. Willig said, when your house is not in order, you don't want any one looking in."

Judgment affirmed.

Nourse, P. J., and Goodell, J., concurred.