[No. A024456. First Dist., Div. One. July 24, 1986.]

NEWELL I. CUTTER II, Plaintiff and Appellant, v.
ROBERT BROWNBRIDGE et al., Defendants and Respondents.

838

**COUNSEL**

Marvin Stender and Garry, Dreyfus & McTernan for Plaintiff and Appellant.

Martin F. McCarthy and Ericksen, Arbuthnot, McCarthy, Kearney & Walsh for Defendants and Respondents.

**OPINION**

**HOLMDAHL, J.**—This case presents the issue of whether a party's psychotherapist is immune from liability for a disclosure of privileged information voluntarily made in a judicial proceeding, when that disclosure violates the patient's constitutional right of privacy.

The judgment dismissing the complaint with prejudice is reversed.

*Statement of Facts*

According to allegations of the first amended complaint, respondent Robert Brownbridge, a licensed clinical social worker, was psychotherapist for appellant Newell I. Cutter II between 1976 and 1982. At the beginning of the psychotherapist-patient relationship, Brownbridge agreed to maintain all communications and diagnoses in confidence. In August 1982, he "voluntarily, and not as a result of subp[o]ena or other legal compulsion" executed a written declaration describing his diagnosis of Cutter, as well as damaging personal details learned as a result of his being Cutter's therapist. The declaration was attached to a request by Cutter's former wife for suspension of his right to visit his children, and filed by her attorney in her pending legal action.[1] As a result of the exposure of this information, Cutter "suffered humiliation, mortification, shame and severe emotional injury and distress and . . . loss of visitation with his children . . . ."

*Procedural History*

In March 1983, Cutter filed a complaint for damages against Brownbridge, alleging that Brownbridge's disclosure of the details of Cutter's therapy violated his constitutional right of privacy and his common law right of privacy, was a breach of an implied covenant of confidentiality, and constituted intentional infliction of emotional distress. Brownbridge demurred on the ground that his declaration was immune from civil liability pursuant to the judicial proceedings immunity of Civil Code section 47, subdivision 2.[2]

The demurrer was sustained with leave to amend and Cutter filed a first amended complaint, which added an allegation that Brownbridge was not

---

[1] The record does not indicate the process by which the declaration came into existence (e.g., who requested it, who drafted it, or Brownbridge's reason for voluntarily providing it). The declaration, however, was typed on stationery of the attorney for Cutter's former wife in that pending legal action.

We refrain from quoting from the declaration in order to avoid further intrusions into Cutter's privacy. It is sufficient to note that it contains factual observations drawn from the psychotherapist-patient relationship, Brownbridge's diagnosis and prognosis, and hearsay from an unnamed third party regarding Cutter's actions.

[2] The demurrer also claimed a conditional privilege based upon Brownbridge's duty to warn others if he believed Cutter was dangerous. There is no fact in the record on appeal or in the file of the superior court to support this contention. This claim remains a conceivable defense to be pled and established in the trial court. We reiterate that our resolution of this appeal is necessarily based upon the facts alleged in the first amended complaint. Although we determine that the issue of the Civil Code section 47, subdivision 2, immunity from suit is a question of fact in the circumstances presented by this demurrer, our opinion has no impact on the availability of affirmative defenses such as waiver, the dangerous patient issue, or other legitimate limitations on the matters encompassed by Cutter's constitutional and statutory interest in confidentiality.

under any legal compulsion to file the declaration. Brownbridge's second demurrer was sustained without leave to amend, and judgment dismissing the complaint with prejudice was entered on July 26, 1983.

## Standard of Review

On appeal, after a demurrer is sustained without leave to amend, all allegations in the complaint are presumed true. (*Shaeffer* v. *State of California* (1970) 3 Cal.App.3d 348, 354 [83 Cal.Rptr. 347].)[3] Recognizing that Civil Code section 47, subdivision 2,[4] immunizes many otherwise actionable statements, Cutter nevertheless argues that his constitutional right of privacy should prevail over the need for truth in judicial proceedings. He refrains from arguing that section 47, subdivision 2, does not apply at all, but instead asks this court to find a constitutionally mandated exception to its applicability when a psychotherapist makes disclosures before having fulfilled his or her duty to claim the privilege and to seek a hearing to determine whether disclosure is appropriate. We agree with the basic thrust of Cutter's argument.

For purposes of this opinion, we assume that the allegations of the complaint state causes of action and that relief would be foreclosed by application of section 47, subdivision 2, unless an alleged violation of a constitutional right requires an exception from that statute.[5] We now consider that constitutional question. (Cf. *Bradley* v. *Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818, 823 [106 Cal.Rptr. 718].)

## Constitutional Right of Privacy

Article I, section 1, of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these

---

[3]In addition to reviewing the first amended complaint and other pleadings on file in this action, we have taken judicial notice, pursuant to Evidence Code section 459, of the superior court file in the action in which Brownbridge submitted the declaration. The parties have not objected to this procedure.

[4]Civil Code section 47 provides in relevant part:
"A privileged publication or broadcast is one made—
" . . . . . . . . . . . . . . . . . . . . .
"2. In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law, . . ."

[5]The complaint alleges in every cause of action that Brownbridge circulated the declaration "to persons unknown" and "further betrayed said confidences to diverse individuals unknown to plaintiff in addition to the disclosures made in the aforementioned declaration." With companion verbiage, this allegation may be sufficient to state a cause of action outside of the judicial proceedings immunity. This argument was not presented in the trial court or argued on appeal. We conclude that the argument was waived and do not base this opinion thereon. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 311, pp. 321-322.)

are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." The reference to privacy was added in 1972 and amended in 1974 to read as stated.

Even before that enactment, however, the California Supreme Court recognized the necessity for confidentiality in the psychotherapist-patient relationship, finding a federal constitutional source for protection from public exposure of a patient's communication to his or her psychotherapist. "[W]e believe that the confidentiality of the psychotherapeutic session falls within one such zone [of constitutionally guaranteed privacy]." (*In re Lifschutz* (1970) 2 Cal.3d 415, 431-432 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1].) Quoting from a reference to Guttmacher et al., in Psychiatry and the Law (1952) page 272, the court noted that a psychiatric patient must expose " " "his entire self, his dreams, his fantasies, his sins, and his shame" " " to the psychotherapist. Such confidence would be impossible if the patient knew that the psychiatrist would then reveal these communications " " "to the whole world from a witness stand." " " (*In re Lifschutz, supra,* 2 Cal.3d at p. 431.)

 Since enactment of the privacy provision, the California Supreme Court has held that it protects one from the improper use of information which has been properly obtained. (*White* v. *Davis* (1975) 13 Cal.3d 757, 775 [120 Cal.Rptr. 94, 533 P.2d 222].) Further, this provision is self-executing, and needs no legislation to create " 'a legal and enforceable right of privacy for every Californian.' " (*Ibid.*) And, based on the election brochure statements drafted by proponents of this constitutional provision, the court has stated that the right to control circulation of personal information is fundamental. (*Id.,* at p. 774; see also *Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 212-213 [211 Cal.Rptr. 398, 695 P.2d 695].) This right reaches beyond the interests protected by the common law right of privacy, and may be protected from infringement by either the state or by any individual. (*Porten* v. *University of San Francisco* (1976) 64 Cal.App.3d 825, 829 [134 Cal.Rptr. 839].) The "zones of privacy" created by article I, section 1, extend to the details of one's medical history. (*Jones* v. *Superior Court* (1981) 119 Cal.App.3d 534, 548-550 [174 Cal.Rptr. 148].) And, an "individual's right to privacy encompasses not only the state of his mind, but also his viscera, detailed complaints of physical ills, and their emotional overtones." (*Board of Medical Quality Assurance* v. *Gherardini* (1979) 93 Cal.App.3d 669, 679 [156 Cal.Rptr. 55].) Most recently, the California Supreme Court has stated: "[¶] If there is a quintessential zone of human privacy it is the mind. Our ability to exclude others from our mental processes is intrinsic to the human personality." (*Long Beach City*

*Employees Assn.* v. *City of Long Beach* (1986) 41 Cal.3d 937, 944, fn. omitted [227 Cal.Rptr. 90, 719 P.2d 660].)

We recognize the close analogy between a physician-patient and a psychotherapist-patient relationship, and conclude that Brownbridge's impressions and diagnosis, and other details of his professional relationship with Cutter fall within the zone of privacy protected by the state Constitution.[6]

Fundamental though this constitutional right may be, it is not absolute and "does not purport to prohibit all incursion into individual privacy but rather that any such intervention must be justified by a compelling interest." (*White* v. *Davis, supra,* 13 Cal.3d at p. 775.) Thus, the interest in ascertaining the truth in judicial proceedings has been held to be sufficiently substantial to justify disclosure of much confidential material, including communications to a psychotherapist. (See, *In re Lifschutz, supra,* 2 Cal.3d 415, and cases cited therein at p. 433.) In the context of discovery of confidential information in personnel files, even when such information is directly relevant to litigation, discovery will not be permitted until a balancing of the compelling need for discovery against the fundamental right of privacy determines that disclosure is appropriate. (*Board of Trustees* v. *Superior Court* (1981) 119 Cal.App.3d 516, 525 [174 Cal.Rptr. 160].) And, even when the balance tips in favor of disclosure, constitutional concerns require a strict circumscription of the scope of the disclosure. (*Id.,* at p. 526.) Similarly, although a patient has a constitutionally protected interest in information contained in his or her medical file, disclosure may be appropriate in narrowly limited circumstances to serve a compelling interest. (*Board of Medical Quality Assurance* v. *Gherardini, supra,* 93 Cal.App.3d 669, 680-681; *Jones* v. *Superior Court, supra,* 119 Cal.App.3d 534, 550.)

Thus, the necessity in judicial proceedings for ascertaining the truth is sufficiently compelling to justify disclosure of constitutionally protected information when narrowly limited to information directly relevant to the issues (*In re Lifschutz, supra,* 2 Cal.3d at p. 435) and when good cause and materiality to the action establish that the need for disclosure outweighs the right to privacy. (*Board of Medical Quality Assurance* v. *Gherardini, supra,* 93 Cal.App.3d 669, 679.)

Hence, in the present case, although Cutter's statements to Brownbridge as his psychotherapist are protected by his constitutional right of privacy,

---

[6]While a patient's relationship with a physician is similar to that with a psychotherapist, we note that the evidentiary privilege extended to the psychotherapist-patient relationship is much broader in scope than the physician-patient privilege. (*Grosslight* v. *Superior Court* (1977) 72 Cal.App.3d 502, 508-509 [140 Cal.Rptr. 278].)

an infringement of that right may be constitutionally permitted when the need for disclosure outweighs his interest in privacy. We turn, then, to a balancing of the policy underlying Civil Code section 47, subdivision 2, with Cutter's right to maintain the privacy of communication with his psychotherapist.[7]

*Cutter's Constitutional Right as Related to Civil Code Section 47, Subdivision 2*

Section 47, subdivision 2, permits an infringement of the right of privacy by denying a remedy in damages when an invasion of privacy occurs in a judicial proceeding. Such a denial calls for constitutional scrutiny.

The protection of article I, section 1, is not limited to direct interference with fundamental rights. (*White* v. *Davis, supra,* 13 Cal.3d at p. 767, discussing the First Amendment, but expressly referring to both the state and federal Constitutions.) In addition, the California Constitution gives a citizen "'a legal and enforceable right,'" (*id.,* at p. 774, italics omitted) not a mere inchoate right which may be effectively nullified by statutory elimination of the chief means of enforcement of that right. Any incursion into the protected interest should be construed, if possible, to preserve the privacy interest, and so that the statute is not applied in an unconstitutional manner.

The interest in shielding litigants and witnesses from the possibility of collateral actions for damages rests on the policies of providing to litigants "the utmost freedom of access to the courts to secure and defend their rights without fear of being harassed . . . ." (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 380 [295 P.2d 405]) and of "facilitating the crucial functions of the finder of fact"—i.e., the determination of the truth. (*Ribas* v. *Clark* (1985)

---

[7]The California Supreme Court has spoken in terms of a balancing of interests in *Doyle* v. *State Bar* (1982) 32 Cal.3d 12, 20 [184 Cal.Rptr. 720, 648 P.2d 942], and *Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652, 657 [125 Cal.Rptr. 553, 542 P.2d 977], but of a compelling interest test in *White* v. *Davis, supra,* 13 Cal.3d 757. Whether the result differs under the application of either test, we cannot readily determine. (See, e.g., Swanson, *Privacy Limitations On Civil Discovery In Federal and California Practice* (1985) 17 Pacific L.J. 1, 17-18.) We utilize the balancing of interests test in the present case, because we perceive that the intrusion (denial of the means to enforce the privacy right) is less onerous than in cases involving invasions of privacy which impact on the free exercise of other constitutional rights in addition to the right of privacy. (*White* v. *Davis, supra,* 13 Cal.3d 757 [intrusion on classroom privacy impacted on First Amend. rights]; *City of Carmel-by-the-Sea* v. *Young* (1970) 2 Cal.3d 259 [85 Cal.Rptr. 1, 466 P.2d 225, 37 A.L.R.3d 1313] [intrusion on financial privacy impacted on right to hold public office]. But see *Long Beach City Employees Assn.* v. *City of Long Beach, supra,* 41 Cal.3d 937, 948, fn. 12 [stating that the compelling interest test would be appropriate in deciding if the right of privacy was violated by requiring employees to submit to polygraph examinations as a condition of continued employment].)

38 Cal.3d 355, 365 [212 Cal.Rptr. 143, 696 P.2d 637].) Quoting from Professor Prosser, the *Ribas* court expressed the view that the lack of a civil remedy against perjurers is the price paid for witnesses who are free to testify without fear of reprisal. (*Ibid.*) With very few exceptions, the immunity afforded by section 47 has been applied to shield otherwise actionable conduct. (*Id.,* at p. 364.) The important public interest upon which this principle is based does not, however, justify or require a blanket immunity for voluntary disclosures of constitutionally protected information.

The policy underlying the judicial proceedings immunity requires freedom from subsequent civil liability based upon factual inquiries into the reasonableness of conduct, the purpose of a publication or the motives, malice, or truthfulness of a participant in such a proceeding. (See Prosser & Keeton on Torts (5th ed. 1984) § 114, p. 816; Veeder, *Absolute Immunity in Defamation: Judicial Proceedings* (1909) 9 Colum.L.Rev. 463, 469.) We perceive, however, a difference in the nature of an inquiry when a violation of a constitutional right is alleged. "If by any process of demonstration, free from the defects of human judgment, the untruth and malice could be set above and beyond all question or doubt, there might be ground for contending that the law should give damages to an injured person." (*Absolute Immunity in Defamation, supra,* at p. 470.)

Although such a "process of demonstration" would be impossible in the context of an action for defamation, with its attendant issues of untruth and malice, such is not so in the present case. The first amended complaint in this action centers on activity which may be objectively evaluated by reference to the statutory provisions governing disclosure of such confidential information.

### *Legislative Accommodation of the Competing Interests*

We need not create Veeder's objective "process of demonstration" out of whole cloth in the present case. ▆▆▆ ▆▆▆ By enactment of the psychotherapist-patient privilege statutes (Evid. Code, §§ 1010-1027), the Legislature has provided a comprehensive scheme by which the need for ascertaining the truth in judicial proceedings can be balanced with a patient's right to privacy. (See, e.g., *In re Lifschutz, supra,* 2 Cal.3d 415, 422-423; *Grosslight* v. *Superior Court, supra,* 72 Cal.App.3d 502, 507-508.) Evidence Code section 1014 provides that a patient has a privilege to prevent disclosure of confidential communications to a psychotherapist. Section 1015 provides that the psychotherapist "shall claim the privilege . . . when the

communication is sought to be disclosed . . . ."[8] These statutes establishing a privilege to withhold evidence are "an aspect of the patient's constitutional right to privacy." (*People* v. *Stritzinger* (1983) 34 Cal.3d 505, 511 [194 Cal.Rptr. 431, 668 P.2d 738].) Statutory exceptions to the evidentiary privilege have been held to be constitutional only when narrowly limited to directly relevant material. (*In re Lifschutz, supra,* 2 Cal.3d 415, 435; *Board of Trustees* v. *Superior Court, supra,* 119 Cal.App.3d 516, 525.)

■ To compel compliance with the statutory provisions of the Evidence Code requiring a psychotherapist to have claimed the privilege in the action in which the information was provided as a prerequisite to application of the judicial proceedings immunity in a subsequent action against the psychotherapist does not involve factual inquiries into a witness' motives or truthfulness. If a cause of action for violation of the constitutional right of privacy fails to allege that disclosure of constitutionally protected information was made voluntarily, without prior resort to judicial evaluation, the court may determine, as a matter of law, whether the publication was immune from liability pursuant to Civil Code section 47, subdivision 2. If such a cause of action does allege voluntary disclosure, a summary factual disposition is possible by recourse to the record of the action in which the disclosure allegedly was made.

■ ■ This process avoids the concerns that access to the courts and the search for truth in judicial proceedings will be chilled by a threat of litigation over factual issues of malice, truth, or other details involved in defamation and other tort actions. We conclude that, when disclosure of constitutionally protected material is contemplated, compliance with the Evidence Code requirements for claiming the privilege when that disclosure is sought and resort to the protective procedures provided are necessary

---

[8]*Evidence Code section 1014 provides, in relevant part:*
"Subject to Section 912 [regarding waiver] and except as otherwise provided in this article, the patient, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist if the privilege is claimed by:
"(a) The holder of the privilege
"(b) A person who is authorized to claim the privilege by the holder of the privilege; or
"(c) The person who was the psychotherapist at the time of the confidential communication, but such person may not claim the privilege if there is no holder of the privilege in existence or if he is otherwise instructed by a person authorized to permit disclosure.
" . . . . . . . . . . . . . . . . . . . . . . . ."
Evidence Code section 1015 provides:
"The psychotherapist who received or made a communication subject to the privilege under this article shall claim the privilege whenever he is present when the communication is sought to be disclosed and is authorized to claim the privilege under subdivision (c) of Section 1014."
Sections 1016 through 1027 provide for exceptions to the privilege in specified instances.

prerequisites to protection of section 47, subdivision 2, immunity. Thus, a psychotherapist who volunteers information concerning a patient obtained in connection with their relationship, does so at his or her peril.

Even without a statutory scheme similar to that for the psychotherapist-patient relationship provided by the Evidence Code, the California Supreme Court has required a similar procedure for notice and court review of the privacy aspects of a bank-customer relationship. The court considered a bank's objection to a discovery order involving disclosure of customer transactions. The court concluded that a bank customer's financial dealings with the bank were entitled to constitutional protection which necessitated "a careful balancing of the right of civil litigants to discover relevant facts, on the one hand, with the right of bank customers to maintain reasonable privacy regarding their financial affairs, on the other." (*Valley Bank of Nevada* v. *Superior Court, supra,* 15 Cal.3d 652, 657.) The court found that "[u]nder present statutory provisions, no attempt is made to achieve such a balance." (*Ibid.*) In order to serve the state's interests in disclosure and protect the right of privacy, the court required the bank to notify the customer of the requested disclosure and to allow the customer to take legal steps to protect his or her privacy interest. (*Id.,* at pp. 657-658.)[9]

We find that imposition of a requirement that a psychotherapist claim the privilege and invoke the procedure set forth in the Evidence Code is no more onerous than the requirement imposed by the California Supreme Court in *Valley Bank of Nevada* that bank customers be given prior notice. An application of Civil Code section 47, subdivision 2, which results in a blanket immunity for disclosures which deliberately circumvent existing judicial procedures for evaluation of constitutionally protected privileged communications leaves no room for the careful balancing that must take place prior to possible infringement of a constitutional right. (Cf., *Valley Bank of Nevada* v. *Superior Court, supra,* 15 Cal.3d 652, 657.) Consequently, we construe section 47, subdivision 2, as providing no blanket immunity for causes of action based upon constitutional violations.

---

[9]*Valley Bank of Nevada* concerned the right of privacy of a bank customer in financial information furnished to the bank. Quoting from *Burrows* v. *Superior Court* (1974) 13 Cal.3d 238, 243 [118 Cal.Rptr. 166, 529 P.2d 590], the court determined that "'[a] bank customer's reasonable expectation is that, *absent compulsion by legal process,* the matters he reveals to the bank will be utilized by the bank only for internal banking purposes.'" (*Valley Bank of Nevada* v. *Superior Court, supra,* 15 Cal.3d at p. 657, italics in *Valley Bank.*) The court required the bank to "take reasonable steps to notify its customer of the pendency and nature of the proceedings and to afford the customer a fair opportunity to assert his interests by objecting to disclosure, by seeking an appropriate protective order, or by instituting other legal proceedings to limit the scope or nature of the matters sought to be discovered." (*Id.,* at p. 658.) In the present case, Evidence Code sections 1010 through 1027 clearly prescribe reasonable steps a psychotherapist is required to follow before he or she makes a disclosure.

■ We have determined that the constitutional right to privacy outweighs the policies underlying the judicial proceedings immunity when private material is voluntarily published, without resort to a prior judicial determination. The order sustaining Brownbridge's demurrer without leave to amend necessarily determined that Civil Code section 47, subdivision 2, applied, without the competing interests involved having been balanced. In view of our determination, that ruling was error.

The judgment of dismissal is reversed.

Racanelli, P. J., and Newsom, J., concurred.