[No. H003501. Sixth Dist. Sept. 26, 1989.]

ITT TELECOM PRODUCTS CORPORATION, Plaintiff and Appellant, v.
GERALD F. DOOLEY et al., Defendants and Respondents.

**COUNSEL**

Morrison & Foerster, Robert D. Raven, Gary M. Rinck, Andrew E. Monach and Peter L. Shaw for Plaintiff and Appellant.

Caputo, Liccardo, Rossi, Sturges & McNeil, Salvador A. Liccardo, R. Donald McNeil, Robert A. Franklin and Robert C. Colyar for Defendants and Respondents.

OPINION

AGLIANO, P. J.—

1. *Introduction*

Does the statutory privilege for statements made in judicial proceedings (Civ. Code, § 47, subd. 2) preclude liability for an otherwise wrongful disclosure of trade secrets? Plaintiff ITT Telecom Products Corporation (ITT) filed the instant suit for damages alleging its former employee, defendant Gerald F. Dooley, had violated contractual and other duties of confidentiality. Dooley moved for summary judgment or summary adjudication based on the privilege, asserting his disclosures were made as a consultant to a party involved in litigation with ITT. The trial court granted Dooley's motion for summary judgment, and ITT has appealed.

As explained below, we will reverse, holding the privilege does not apply to the voluntary disclosure of trade secrets in violation of a contract of confidentiality.

2. *Scope of review*

■ "Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same three-step analysis required of the trial court. (Code Civ. Proc., § 437c . . . .)" (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) "First, we identify the issues framed by the pleadings . . . ." (*Ibid.*) Second, we identify which, if any, material facts are truly undisputed by comparing the separate statements of facts and supporting evidence in the motion, the opposition, and in any reply. (Code Civ. Proc., § 437c, subd. (b).) Third, disregarding disputed facts, we consider whether the motion has "establish[ed] a complete defense or otherwise show[n] there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading." (*AARTS Productions, Inc., supra,* at p. 1064.)[1]

3. *The pleadings*

ITT alleged that after July 1982 and before September 1983 Dooley disclosed confidential information and trade secrets as a paid consultant to

---

[1] This analysis modifies that in *AARTS Productions, Inc.* to recognize the separate statements required since 1984. (Stats. 1983, ch. 490, § 1, p. 1991.)

Intercontinental De Communicaciones Por Satelite, S. A., a Panamanian corporation (Intercomsa). The disclosures were concurrent with ITT's October 1982 demand for arbitration with Intercomsa and Intercomsa's April 1983 lawsuit against ITT concerning an allegedly defective telephone switching system purchased from ITT, a Delaware corporation.

ITT's appeal concerns only two of its causes of action. One alleged that Dooley breached a written contract not to disclose confidential information obtained during his employment. The other alleged misappropriation of ITT's trade secrets and confidential, proprietary information.[2] ITT sought compensatory damages and punitive damages for the tort.[3]

### 4. *Material, undisputed facts*

In 1967 in Ohio, Dooley signed an "employee's agreement to assign inventions" with ITT's predecessor which provided in pertinent part: "I further agree that I will not, except as required in the conduct of the Company's business or as authorized in writing on behalf of the Company, publish or disclose, during such term of employment or subsequent thereto, any secret or confidential knowledge concerning any invention or other matter relating to the Company's business which I may in any way acquire by reason of my employment by the Company."

In December 1977, ITT retained Dooley after acquiring the assets, including contract rights, of Dooley's former employer. Dooley left ITT's employ in July 1982.

After Intercomsa became dissatisfied with an international telephone switching system it had purchased from ITT, in October 1982 ITT demanded arbitration in New York. Intercomsa contacted a telecommunications consulting firm to assist its arbitration defense.

In October 1982, the consulting firm hired Dooley for $600 to $800 per day as an expert consultant. Dooley traveled to Panama for a week in November 1982 to consult with Intercomsa. Intercomsa wanted to know whether the switching system conformed to ITT's product descriptions and specifications and the contract between Intercomsa and ITT. Dooley answered 11 of Intercomsa's questions by a written report dated November 19, 1982. Dooley also instructed Intercomsa on traffic engineering of telephone calls based on his general education, his work experience with ITT

---

[2] ITT's other purported causes of action were: breach of an implied covenant of good faith and fair dealing in the written employment contract, unfair competition, violation of Labor Code section 2860, and injunctive relief.

[3] We note no issue is made of the absence of the defense of privilege from Dooley's answer.

and previous employers, and his knowledge of particular product developments by ITT.

Dooley supplied Intercomsa with other information about the system which he obtained from another former employee of ITT who wished to remain anonymous. Dooley could not recall if his informant was still employed by ITT when he obtained this information.

Dooley discussed his report with Intercomsa's attorneys in Washington, D.C., in December 1982 or January 1983.

Dooley provided Intercomsa with information for the purpose of assisting it in litigation with ITT. In April 1983, Intercomsa filed a complaint against ITT in a Florida federal district court. On February 1, 1984, the district court granted Intercomsa's motion precluding ITT from deposing Dooley or obtaining his report because he was not a designated trial witness, although he was designated an expert consultant.[4] This action was filed on February 28, 1984. The following day, ITT filed an ex parte motion to expedite Dooley's deposition and production of his report.

5. *Overview of statutory privilege for statements made in judicial proceedings*

In *Financial Corp. of America* v. *Wilburn* (1987) 189 Cal.App.3d 764 [234 Cal.Rptr. 653], this court examined the nature of the privilege for statements made in judicial proceedings.[5] We explained in part: "By statute an action for defamation cannot be predicated on certain privileged oral or written statements. 'A privileged publication or broadcast is one made . . . 2. In any . . . (2) judicial proceeding . . . .' (Civ. Code, § 47.)" (*Id.* at p. 771.) "This privilege is absolute in that it applies regardless of whether a statement was uttered with malice or bad faith. ([Citation]; *Thornton* v. *Rhoden* [(1966)] 245 Cal.App.2d 80, 93 [23 A.L.R.3d 1152]; [citation].) However, its applicability depends on whether the statement was 'made in' a 'judicial proceeding.' *Albertson* [ v. *Raboff* (1956)] 46 Cal.2d 375, faced the question whether a notice of lis pendens was privileged. The court determined the privilege should be given a broad application in view of its underlying policy, holding: 'It is our opinion that the privilege applies to

[4] ITT requests us to judicially notice the order terminating the federal action in its favor on January 24, 1987. (Evid. Code, §§ 452, subd. (c), 459.) ITT fails to show its relevance. We decline to notice irrelevant matter. (*Mozzetti* v. *City of Brisbane* (1977) 67 Cal.App.3d 565, 578 [136 Cal.Rptr. 751]; *Gbur* v. *Cohen* (1979) 93 Cal.App.3d 296, 301 [155 Cal.Rptr. 507].)

[5] We assume, as have the parties, that this appeal should be decided under California law, where Dooley has resided since May 1983. (Compare, e.g., *Offshore Rental Co.* v. *Continental Oil Co.* (1978) 22 Cal.3d 157 [148 Cal.Rptr. 867, 583 P.2d 721].)

any publication, such as the recordation of a notice of *lis pendens,* that is required [citation] or permitted [citation] by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is invoked. [Citation.] Thus, it is not limited to the pleadings, the oral or written evidence, to publications in open court or in briefs or affidavits. If the publication has a reasonable relation to the action and is permitted by law, the absolute privilege attaches.' (*Id.,* at pp. 380-381.) The court supported this expansive reading of the statutory privilege by reference to common-law absolute privileges described in the Restatement of Torts sections 585-589 which protect certain actors in judicial proceedings against defamation actions. (*Id.,* at pp. 378, 381.)" (189 Cal.App.3d 764, 771-772.)

At issue in *Financial Corp. of America* v. *Wilburn, supra,* 189 Cal.App.3d 764, was whether statements by an attorney preceding (*id*. at pp. 777-778) and during litigation (*id*. at pp. 774-777) were privileged against claims of intentional interference with economic advantage and abuse of process. We noted that the statutory privilege has been applied to statements made by actual and prospective nonparty witnesses in litigation and other quasi-judicial proceedings. (*Id*. at pp. 772, 777-778; cf. *Ribas* v. *Clark* (1985) 38 Cal.3d 355, 364-365 [212 Cal.Rptr. 143, 696 P.2d 637, 49 A.L.R.4th 417]; *Bernstein* v. *Alameda etc. Med. Assn.* (1956) 139 Cal.App.2d 241, 245-247 [293 P.2d 862]; *Thornton* v. *Rhoden* (1966) 245 Cal.App.2d 80, 93, 99 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152]; *Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626, 641 [99 Cal.Rptr. 393]; *Block* v. *Sacramento Clinical Labs, Inc.* (1982) 131 Cal.App.3d 386, 393-394 [182 Cal.Rptr. 438]; *McClatchy Newspapers, Inc.* v. *Superior Court* (1987) 189 Cal.App.3d 961, 971, 973-974 [234 Cal.Rptr. 702]; *Carden* v. *Getzoff* (1987) 190 Cal.App.3d 907, 913-916 [235 Cal.Rptr. 698].)[6]

### 6. *Were the statements made in a judicial proceeding?*

■ We preliminarily dispose of several of ITT's contentions regarding the applicability of the privilege to Dooley's disclosures to Intercomsa. Here, as in *Wilburn,* "[t]he dispute between [the parties] is fueled by the tension in the law between liberal and restrictive applications of the privilege." (189 Cal.App.3d 764, 773.) Examples of liberal applications are *Albertson* v. *Raboff* (1956) 46 Cal.2d 375 [295 P.2d 405], and *Thornton* v.

---

[6]The cited cases involve only witnesses in judicial proceedings, though Civil Code section 47, subdivision 2, renders privileged statements made in "any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure . . . ."

*Rhoden, supra,* 245 Cal.App.2d 80, and of restrictive applications are *Bradley* v. *Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818 [106 Cal.Rptr. 718], and its progeny such as *Barbary Coast Furniture Co.* v. *Sjolie* (1985) 167 Cal.App.3d 319, 334 [213 Cal.Rptr. 168]. (*Wilburn, supra,* 189 Cal.App.3d 764, 772-774.)

■ ITT's contentions are based on *Bradley, supra,* 30 Cal.App.3d 818, where "[t]he court interpreted existing California precedent and the Restatement categories as sketching the outermost boundaries for application of the privilege (*id.,* at pp. 824-825), and concluded: '[A]bsolute privilege in judicial proceedings is afforded only if the following conditions have been met: the publication (1) was made in a judicial proceeding; (2) had some connection or logical relation to the action; (3) was made to achieve the objects of the litigation; and (4) involved litigants or other participants authorized by law.' (*Id.,* at p. 825.) The third condition was further refined by the court, which underlined 'the requirement that [the publication] be made in furtherance of the litigation and to promote the interest of justice.' (*Id.,* at p. 826.)" (*Wilburn, supra,* 189 Cal.App.3d 764, 772-773, italics omitted.) We note that *Bradley*'s elaboration on the third condition has been questioned (*O'Neil* v. *Cunningham* (1981) 118 Cal.App.3d 466, 475 [173 Cal.Rptr. 422]) and expressly rejected (*McClatchy Newspapers, Inc., supra,* 189 Cal.App.3d 961, 971).

■■■■ ITT concedes for purposes of this appeal that Dooley's statements meet *Bradley*'s first two conditions, but contends they do not meet the third and fourth conditions.[7]

■ ITT argues Dooley's statements were not made to promote justice or achieve the objects of the arbitration or the federal action. Instead, he made them solely for compensation. As Dooley responds, it is undisputed that his statements were made in order to assist ITT's adversary in litigation.

*Wilburn* summarized the law as follows. "The privileged status of a particular statement . . . depends on its relationship to an actual or potential issue in an underlying action. Courts respect the absolute aspect of the privilege by considering a statement's apparent or ostensible connection to the underlying action, without exploring the writer's [or speaker's] actual,

---

[7] ITT here does not question that Dooley made prelitigation statements in good faith contemplation of litigation. (Cf. *Wilburn, supra,* 189 Cal.App.3d 764, 773, 777; Rest.2d Torts, § 588, com. e, p. 251.) Though the relationship between the statements and the requested arbitration is undeveloped, we observe "an arbitration hearing falls within the scope of this privilege because of its analogy to a judicial proceeding." (*Ribas* v. *Clark, supra,* 38 Cal.3d 355, 364.)

subjective intent or purpose." (189 Cal.App.3d 764, 776.)[8] Dooley's statements fit the third condition of the privilege because they were made to assist in litigation.

ITT also contends Dooley, as a consultant and not a witness or party, is not the type of person entitled to claim the privilege. This contention assumes, as *Bradley* indicated (30 Cal.App.3d 818, 826), the statutory privilege is confined to the types of persons identified as privileged at common law in the Restatement of Torts. The statutory language, however, contains no such limitations. (Cf. *O'Neil* v. *Cunningham, supra,* 118 Cal.App.3d 466, 473-474.) Who made the statement is merely a circumstance to consider in ascertaining its relationship to litigation. (Cf. *Wilburn, supra,* 189 Cal.App.3d 764, 778.)

Moreover, the privilege has been extended to statements made by potential expert witnesses much like Dooley. (*Bernstein* v. *Alameda etc. Med. Assn., supra,* 139 Cal.App.2d 241, 245-247—medical society could not expel doctor for report on another doctor's performance provided to attorney for use in workers' compensation proceeding; *Block* v. *Sacramento Clinical Labs, Inc., supra,* 131 Cal App.3d 386, 393-394—no professional negligence claim arises from toxicologist's report to district attorney on blood sample studies or later testimony at hearing on resulting criminal charges; *Carden* v. *Getzoff, supra,* 190 Cal.App.3d 907, 913-916—accountant's written and oral valuations of business for purpose of dissolution provide no basis for husband's claims of negligent and intentional infliction of emotional distress or abuse of process.) Here, Dooley's statements were made to assist a potential litigant seeking potential evidence. Nothing about this relationship to the litigation disqualifies Dooley from claiming the privilege. (Accord *Kahn* v. *Burman* (E.D.Mich. 1987) 673 F.Supp. 210, 213—report on doctor's performance by expert consultant preliminary to malpractice action absolutely privileged at common law.)

Again invoking *Bradley, supra,* 30 Cal.App.3d 818, 826, ITT warns that to apply the privilege is to condone filing lawsuits for the sole purpose of shielding related trade secret disclosures. Such allegations do not appear in ITT's complaint.

The application of the privilege should not depend on Intercomsa's later decision, relevant to discovery under federal civil procedure, whether to

---

[8] In *Wilburn* we applied the privilege liberally, implicitly rejecting *Bradley*'s restrictive view. (189 Cal.App.3d 764, 776-778.) The authors of *Bradley* and *Barbary Coast Furniture Co.* disassociated themselves from *Wilburn*'s conclusions in *Silberg* v. *Anderson* (Cal.App.), also relied on by ITT. Presumably the California Supreme Court granted review of that case (on Oct. 27, 1988 (S007056)) to resolve this conflict in authority.

designate a consultant as an expert witness. A contrary conclusion would hinder judicial search for the truth. (Cf. *Kahn, supra,* 673 F.Supp. 210, 213.) We conclude that statements by Dooley as a consultant to assist a potential litigant qualify for the statutory privilege.

*7. Does the privilege apply to statements violating a contract of confidentiality?*

■ ITT contends the statutory privilege of Civil Code section 47, subdivision 2, does not apply to statements in breach of an express contract of confidentiality or nondisclosure.

ITT acknowledges the statutory privilege has not been limited to defamation claims. In *Albertson* v. *Raboff, supra,* 46 Cal.2d 375, the privilege was applied to a claim of disparagement of title. (*Id.* at pp. 378-379.) As explained in *Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157 [232 Cal.Rptr. 567, 728 P.2d 1202], "In the three decades since *Albertson,* numerous California cases have followed that decision's application of section 47(2) outside of the defamation arena and have held the statutory privilege applicable to a wide variety of tort theories on which plaintiffs have attempted to rely in order to recover monetary damages for conduct of a defendant that would be privileged for defamation purposes.[5]" (*Id.* at p. 1164.) Footnote 5 states: "See, for example, *Kachig* v. *Boothe* [, *supra,* ] 22 Cal.App.3d 626, 640-641 . . . (intentional infliction of emotional distress); . . . *Pettit* v. *Levy* (1972) 28 Cal.App.3d 484 . . . (same, fraud and negligence); *Agostini* v. *Strycula* (1965) 231 Cal.App.2d 804 . . . (inducing breach of contract); *Brody* v. *Montalbano* (1978) 87 Cal.App.3d 725, 737-738 . . . (intentional interference with prospective economic advantage); *Block* v. *Sacramento Clinical Labs, Inc.* [, *supra,* ] 131 Cal.App.3d 386 . . . (professional negligence). See, in addition, *Ribas* v. *Clark* [, *supra,* ] 38 Cal.3d 355, 364-365 . . . (statutory invasion of privacy claim)." (*Ibid.*) "The *Thornton* [, *supra,* ] decision . . . [held] that the section 47(2) privilege applies to a tort action for abuse of process." (*Id.* at p. 1165.)

Dooley emphasizes the following statement in *Ribas* v. *Clark, supra,* 38 Cal.3d 355. "[A]lthough the statutory privilege accorded to statements made in judicial proceedings appears in the code in the chapter on defamation, it applies to virtually all other causes of action, with the exception of an action for malicious prosecution." (*Id.* at p. 364; accord *Wilburn, supra,* 189 Cal.App.3d 764, 771.) *Ribas* applied the privilege to a statutory cause of action for invasion of privacy (Pen. Code, § 631) by an eavesdropper's reporting of a telephone conversation. (38 Cal.3d 355, 364-365.)

The parties have not cited and we have not found any precedent considering application of the privilege for a witness's statements in judicial proceedings to the breach of an express nondisclosure agreement. (Compare *Bond* v. *Pecaut* (N.D.Ill. 1983) 561 F.Supp. 1037, 1041, affirmed 734 F.2d 18—common law witness privilege would apply to breach of implied confidentiality contract.) ITT again relies on *Bradley* in arguing the privilege should be narrowly confined to cases where its application is required by public policy and should not be extended without a "specific justification" for so doing. Without endorsing the restrictive view, we agree the privilege should not be automatically applied to new legal theories without consideration of the competing policies involved.

■ The policy served by the privilege accorded witnesses has been explained as follows. "The function of witnesses is of fundamental importance in the administration of justice. The final judgment of the tribunal must be based upon the facts as shown by their testimony, and it is necessary therefore that a full disclosure not be hampered by fear of private suits for defamation. The compulsory attendance of all witnesses in judicial proceedings makes the protection thus accorded the more necessary. The witness is subject to the control of the trial judge in the exercise of the privilege. For abuse of it, he [or she] may be subject to criminal prosecution for perjury and to punishment for contempt." (Rest.2d Torts, § 588, com. a, p. 250.) More succinctly, "Underlying the privilege is the vital public policy of affording free access to the courts and facilitating the crucial functions of the finder of fact." (*Ribas* v. *Clark, supra,* 38 Cal.3d 355, 364-365.)

This privilege has been applied to new claims on the following reasoning. "The salutary purpose of the privilege should not be frustrated by putting a new label on the complaint." (*Thornton* v. *Rhoden, supra,* 245 Cal.App.2d 80, 99.) " 'The resulting lack of any really effective civil remedy against perjurers is simply part of the price that is paid for witnesses who are free from intimidation by the possibility of civil liability for what they say.' (Prosser, Law of Torts (4th ed. 1971) p. 778.) This policy is equally compelling in the context of common law and statutory claims for invasion of privacy; there is no valid basis for distinguishing between the two." (*Ribas* v. *Clark, supra,* 38 Cal.3d 355, 365; accord *Hagan* v. *Fairfield* (1965) 238 Cal.App.2d 197, 201 [47 Cal.Rptr. 600]; *Bernstein* v. *Alameda etc. Med. Assn., supra,* 139 Cal.App.2d 241, 246; *Block* v. *Sacramento Clinical Labs, Inc., supra,* 131 Cal.App.3d 386, 390-391.)

■ On the other hand, trade secrets have been recognized as a constitutionally protected intangible property interest. (*Ruckelshaus* v. *Monsanto Co.* (1984) 467 U.S. 986, 1001-1004 [81 L.Ed.2d 815, 831-833, 104 S.Ct. 2862].) Evidence Code section 1060 provides: "If he or his agent or employ-

ee claims the privilege, the owner of a trade secret has a privilege to refuse to disclose the secret, and to prevent another from disclosing it, if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice."

Moreover, it is possible to waive even First Amendment free speech rights by contract. In *In re Steinberg* (1983) 148 Cal.App.3d 14, 20 [195 Cal.Rptr. 613], the court recognized that a moviemaker had a First Amendment right to disseminate his movie, but that this right was limited by his agreement to submit the final version of the movie to the juvenile court for editing.[9] In *Erie Telecommunications, Inc.* v. *City of Erie, Pa.* (3d Cir. 1988) 853 F.2d 1084, 1094-1101, a cable television franchisee was held under federal law to have voluntarily, knowingly, and intelligently waived its First Amendment rights by an agreement with the franchisor.

Thus, we balance society's interest in accurate judicial proceedings against ITT's property interest in information yielding a competitive advantage and Dooley's written promise of nondisclosure.

Dooley relies on *Willig* v. *Gold* (1946) 75 Cal.App.2d 809 [171 P.2d 754], which observed that an agent is under no legal duty to refrain from disclosing his principal's dishonest acts to their victim. (*Id.* at p. 814.) *Willig* involved no assertion of privilege and its irrelevance is manifest.

ITT asks us to follow *Cutter* v. *Brownbridge* (1986) 183 Cal.App.3d 836 [228 Cal.Rptr. 545], in striking a balance between these competing policies. There a patient sued his psychotherapist for voluntarily disclosing confidential information to the patient's litigation opponent. The court perceived it had to balance the witnesses' privilege[10] against the patient's constitutional right to privacy. (*Id.* at p. 845.) The court determined this balance had already been struck by the Legislature, noting Evidence Code section 1015 requires a psychotherapist to assert the patient's privilege against disclosure of confidential communications. (*Id.* at pp. 845-846.) The court concluded, "when disclosure of constitutionally protected material is contemplated, compliance with the Evidence Code requirements for claiming the privilege when that disclosure is sought and resort to the protective

---

[9] *Steinberg* cites cases upholding secrecy agreements by Central Intelligence Agency employees against First Amendment claims. They rely primarily on national security concerns rather than particular contract language. (E.g., *Snepp* v. *United States* (1980) 444 U.S. 507, 509-511, fns. 3, 6 [62 L.Ed.2d 704, 708-709, 100 S.Ct. 763]; *United States* v. *Marchetti* (4th Cir. 1972) 466 F.2d 1309, 1316-1317, cert. den. 409 U.S. 1063 [34 L.Ed.2d 516, 93 S.Ct. 553].)

[10] We employ this terminology simply to distinguish the privilege of Civil Code section 47, subdivision 2, from the statutory trade secret privilege without retreating from our observations in part 6 above.

procedures provided are necessary prerequisites to protection of section 47, subdivision 2, immunity. Thus, a psychotherapist who volunteers information concerning a patient obtained in connection with their relationship, does so at his or her peril." (*Id.* at pp. 846-847; see Annot. (1986) 48 A.L.R.4th 668.)

*Cutter* is useful for both its dissimilarities and similarities. Notably, it did not involve an express agreement on nondisclosure or confidentiality. Instead, the psychotherapist was recognized to have a statutory duty to protect the patient's confidences. In contrast, Evidence Code section 1060 imposes no similar duty on an employee or other party to a trade secret to claim the owner's privilege against disclosure.

The protection afforded by Evidence Code section 1060 would be nugatory unless an employer is able to fill the gap in the statute by contractually requiring an employee to assert the employer's privilege against trade secret disclosure, as ITT essentially did here. By the express nondisclosure agreement, Dooley undertook an obligation similar to the psychotherapist's statutory duty.

We note there is no claim Dooley's disclosures were judicially compelled. Dooley does not argue that his alleged breach of contract is excused because his performance was prevented by operation of law (Civ. Code, § 1511) or that the nondisclosure agreement is unenforceable because its object or the consideration is illegal. (Civ. Code, §§ 1550, 1598, 1599, 1607, 1608, 1667.)

Under the circumstances before us, we hold that Dooley was not privileged under Civil Code section 47, subdivision 2, to voluntarily breach an express confidentiality agreement.

8. *Has Dooley disclosed any trade secrets?*

■ Dooley contends a separate ground for granting summary judgment is that ITT "has not identified any specific information, statement or report it considers a trade secret or confidential information that was disclosed by" Dooley.

The undisputed facts do not warrant this sweeping assertion. What is undisputed is that ITT is unaware of Dooley disclosing trade secrets or confidential information to anyone other than Intercomsa. As ITT points out, the disclosure of confidential information not amounting to trade secrets is arguably a breach of Dooley's express contract. The undisputed facts recited in part 4 above indicate Dooley's statements to Intercomsa were based on information which might have been confidential.

In any event, as we observed in *AARTS Productions, Inc.* v. *Crocker National Bank, supra,* 179 Cal.App.3d 1061, a summary judgment motion "must stand self-sufficient and cannot succeed because the opposition is weak. [Citations.] A party cannot succeed without disproving even those claims on which the opponent would have the burden of proof at trial. [Citations.]" (*Id.* at pp. 1064-1065.) Dooley's separate statement of undisputed facts did not require ITT to prove its case at this stage of the proceedings.

We address the remaining contentions to provide guidance in further proceedings. (Code Civ. Proc., § 43.)

9. *Does the privilege apply to a tort claim of misappropriation of trade secrets?*

ITT contends "the section 47(2) privilege does not apply to the tort of unlawfully misappropriating and disclosing trade secrets." (Capitals omitted.)

This cause of action arose from an employee's duty at common law not to disclose an employer's trade secrets.[11] (*Diodes, Inc.* v. *Franzen* (1968) 260 Cal.App.2d 244, 250-251 [67 Cal.Rptr. 19], and cases there cited.) "Generally the law of unfair competition prohibits former employees from disclosing or misusing an employer's trade secrets and confidential information—even in the absence of contractual restrictions." (*Loral Corp.* v. *Moyes* (1985) 174 Cal.App.3d 268, 275 [219 Cal.Rptr. 836].) This cause of action appears to have been "merely a species of the broader tort" (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 823 [122 Cal.Rptr. 745, 537 P.2d 865]) of breach of confidence, namely, the unauthorized disclosure of confidential information. (*Tele-Count Engineers, Inc.* v. *Pacific Tel. & Tel. Co.* (1985) 168 Cal.App.3d 455, 462-463 [214 Cal.Rptr. 276], and cases there cited; *Davies* v. *Krasna* (1966) 245 Cal.App.2d 535, 549-550 [54 Cal.Rptr. 37].) Trade secrets were protected by "the tort law of the marketplace" (*Loral Corp.* v. *Moyes, supra,* 174 Cal.App.3d 268, 275) in order to preserve a business's resulting competitive advantage. (*Diodes, Inc.* v. *Franzen, supra,* 260 Cal.App.2d 244, 251; *Rigging Internat. Maintenance Co.* v. *Gwin* (1982) 128 Cal.App.3d 594, 606 [180 Cal.Rptr. 451].)

The applicability of the witnesses' privilege to this tort cause of action presents different policy questions than the breach of a nondisclosure agreement discussed above in part 7.

---

[11] We observe this cause of action is not based on the Uniform Trade Secrets Act (Civ. Code, §§ 3426-3426.10) enacted effective January 1, 1985 (§ 3426.10), since Dooley's alleged misappropriation occurred before September 1983.

■ Tort and contract law have been contrasted as follows. "As Professor Prosser has explained: '[Whereas] [c]ontract actions are created to protect the interest in having promises performed,' '[t]ort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are imposed by law, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties . . . .' (Prosser[, *supra,* ] p. 613.)" (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 176 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314].) "The law imposes the obligation that 'every person is bound without contract to abstain from injuring the person or property of another, or infringing upon any of his rights.' (Sec. 1708, Civ. Code.) This duty is independent of the contract and attaches over and above the terms of the contract. . . . 'It may be granted that an omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty. But such legal duty . . . may spring from extraneous circumstances not constituting elements of the contract as such, although connected with and dependent upon it and born of that wider range of legal duty which is due from every man to his fellow, to respect his rights of property and person, and refrain from invading them by force or fraud.' " (*Jones* v. *Kelly* (1929) 208 Cal. 251, 255 [280 P. 942].) " 'The common thread woven into all torts is the idea of unreasonable interference with the interests of others.' " (*Smith* v. *Superior Court* (1984) 151 Cal.App.3d 491, 496 [198 Cal.Rptr. 829], quoting Prosser, *supra,* at p. 6, italics omitted.) Tort law may be viewed as attempting to define the terms of the unwritten social contract that binds members of a society together.

We note that Civil Code section 47, subdivision 2, has been applied to claims involving alleged breaches of confidence. In *Lebbos* v. *State Bar* (1985) 165 Cal.App.3d 656 [211 Cal.Rptr. 847], an attorney claimed, among other things, the State Bar had violated a "mandatory duty of confidentiality" (*id.* at p. 663) in interviewing complainants about her. The court reasoned, "since Civil Code section 47, subdivision 2, has been applied to provide immunity from a variety of tort actions based on publications in protected proceedings it can be inferred that section 47, subdivision 2, bars actions for violation of mandatory duty where the 'violation' consisted of communications in the course of a disciplinary investigation which is a quasi-judicial proceeding and consequently protected." (*Id.* at p. 667, fn. 4, italics omitted.) In *O'Neil* v. *Cunningham, supra,* 118 Cal.App.3d 466, a client claimed his attorney disclosed confidential information in order to settle a case. (*Id.* at p. 470.) The court found the disclosure privileged, though it might subject the attorney to state bar discipline. (*Id.* at p. 476.) The underlying tort theory was defamation, rather than any new tort. (*Id.* at pp. 471-472.)

We also derive guidance from cases considering whether an alleged invasion of privacy was privileged. The personal secrets of individuals are comparable to the trade secrets of businesses. We have already discussed in part 7 above both *Ribas* v. *Clark, supra,* 38 Cal.3d 355, where the witnesses' privilege overcame both common law and statutory invasion of privacy claims, and *Cutter* v. *Brownbridge, supra,* 183 Cal.App.3d 836, where the privilege was limited by a constitutional invasion of privacy claim. We add that in *Hagan* v. *Fairfield, supra,* 238 Cal.App.2d 197, 201, the privilege defeated a common law invasion of privacy claim.

We consider ITT's interest in trade secrets to be closer to the common law privacy right in *Ribas* than the constitutional privacy right in *Cutter.* As already explained, unlike the psychotherapist in *Cutter,* Dooley had no statutory duty to assert ITT's trade secret privilege.

The trade secret protection desired by ITT is spelled out in the nondisclosure agreement with Dooley. We are unconvinced any similar obligation imposed by tort law should overcome the witnesses' privilege to voluntarily make statements in judicial proceedings. We hold the privilege applies to ITT's tort claim of unauthorized disclosure of trade secrets.

10. *Did Dooley engage in unprivileged tortious conduct?*

ITT contends that even if Dooley's disclosures to Intercomsa are privileged against a tort claim, he engaged in other conduct not similarly privileged.

ITT relies on *Rosenfeld, Meyer & Susman* v. *Cohen* (1983) 146 Cal.App.3d 200 [194 Cal.Rptr. 180], which states, "See also *Westlack [sic] Community Hospital* v. *Superior Court* (1976) 17 Cal.3d 465, 482 . . . where the court reaffirms the rule that Civil Code section 47, subdivision 2 is a statute which confers an absolute privilege which attaches only to *statements* or *publications,* but not *actions* of the person invoking the privilege." (*Id.* at p. 234, italics in original.)

ITT more specifically asserts Dooley "is liable not just because the information was disclosed, but because he breached the solemn trust of his former employer. [Fn. omitted.]" ITT does not advance its position by reiterating it in various ways. The breach of trust was the disclosure and vice versa.

ITT also asserts Dooley's "liability derives not just from the statements themselves, but from his actions in soliciting and receiving money for the sale of information that was not his to sell." ITT misunderstands the nature

of its tort cause of action. Absent unauthorized disclosure of trade secrets, there is nothing wrongful about Dooley being paid for his expertise. ITT identifies no other tortious conduct by Dooley other than his privileged statements.

11. *Disposition*

The summary judgment is reversed because the privilege is inapplicable to Dooley's voluntary disclosures allegedly violating his nondisclosure agreement. ITT to recover costs on appeal.

Cottle, J., and Elia, J., concurred.

A petition for a rehearing was denied October 25, 1989, and respondents' petition for review by the Supreme Court was denied December 21, 1989.