Charles R. **LACHMAN** et al., Appellants,

v.

**SPERRY–SUN WELL SURVEYING COMPANY, a corporation,**
Appellee.

No. 661–70.

United States Court of Appeals,
Tenth Circuit.

March 2, 1972.

Rehearing Denied May 16, 1972.

Before SETH, HOLLOWAY and McWILLIAMS, Circuit Judges.

SETH, Circuit Judge.

This is an appeal from an order of the United States District Court for the Western District of Oklahoma, dismissing plaintiffs' suit for damages for breach of contract on the ground it failed to state a cause of action.

The plaintiffs had an oil and gas lease on a tract in Oklahoma on which an oil and gas well had been drilled. In April 1967 they contracted with the defendant for a directional survey of the well. This contract forbade the defendant to communicate information concerning the survey or well to any third party. Defendant company completed the survey and submitted its report which indicated that the well deviated from the vertical to such an extent that it was bottomed on a neighboring tract of land the oil and gas rights to which belonged to third parties. The well survey indicated that the hole from a depth of about 6800 feet below the surface to a depth of 9285 feet was outside the plaintiffs' tract. The well was producing from an interval of about 7887 feet to 8002 feet, and from below 8600 feet. The well had been drilled by an independent contractor under a turnkey contract.

It is not disputed that at the time of the survey the well was producing oil and gas from the adjoining tract. Some time after learning that plaintiffs' well deviated into the subsurface of the adjoining tract, employees of defendant Sperry-Sun notified the owners of the oil and gas rights on the adjoining tract of such deviation. These parties then brought suit against plaintiffs in the state court, and won a judgment establishing their rights to the proceeds of all oil and gas produced by the well and causing plaintiffs to plug the well back to their own boundary line.

Plaintiffs thereafter brought this suit against Sperry-Sun on their contract, alleging a breach thereof by the disclosure of the results of the directional survey to the adjoining owners, the direct

Robert J. Emery, Oklahoma City, Okl. (William D. Curlee, Oklahoma City, Okl., with him on the brief), for appellants.

Coleman Hayes, Oklahoma City, Okl. (E. M. Cage, Dallas, Tex., J. Colbert Peurifoy, Houston, Tex., and J. Paul Greve, Tulsa, Okl., with him on the brief), for appellee.

result of which was the adverse judgment referred to above. The trial court dismissed the suit on the basis that public policy "will never penalize one for exposing wrongdoing . . .," and this appeal was taken.

■ It is apparent that the basic issue in this appeal does not fall neatly within any well recognized legal category. While it is axiomatic that an agreement in violation of law is illegal and void, Smith v. Southwestern Bell Telephone Co., 349 P.2d 646 (S.C.Okl.1960), we are not presented here with a contract which, on its face, contravenes Oklahoma law. The defendant-appellee however contends that the effect of its contract with appellants, if appellants prevail, would make possible the undetected and wrongful depletion of the oil and gas under another's property. It suggests that the state has such an interest in preventing such an act that the contractual silence was properly broken.

An agreement, the object of which is the commission of a civil wrong against a third person, is also illegal and void although such wrong may not be an indictable offense or crime. In the present case the parties did not of course execute the contract for the purpose of harming the adjoining property owners, but it is clear that non-disclosure of the deviation would have had this result. Should the consequences be the same as if the fact were known when the contract was executed? At 6A Corbin, Contracts, § 1455, the author states: " . . . A bargain is illegal if it is made for the purpose of defrauding one or more third persons, or if its terms are such that it will have such an effect." The Restatement of Contracts, § 577 states: "A bargain, performance of which would tend to harm third persons by deceiving them as to material facts, or by defrauding them, or without justification by other means is illegal." The lack of fraud or deception in the present case, strictly speaking, removes it from these rules of contract law. They are cited, however, to indicate the law's reluctance to enforce contracts which have the effect of injuring third

persons, whether such a possibility is anticipated or not. It is apparent that it is the silence contracted for in view of the facts found by the survey that creates a condition not contemplated by the parties and, had it been, the agreement for silence would be unenforceable.

In Willig v. Gold, 75 Cal.App.2d 809, 171 P.2d 754 (1946), the plaintiff employed defendant to find a party willing to purchase plaintiff's business. Defendant found a buyer, but was dissatisfied with his commission. He then went to plaintiff's insurer with the information that it had been underpaid on policies issued to plaintiff, a fact known to defendant due to his prior confidential relationship with the insured. The insurer recovered the amount of the underpaid or understated premiums in court, and split the recovery with its informant, the defendant. The defendant's former employer then sued him for violation of trust. In ruling for the defendant, the court said:

"Appellant's . . . claim is somewhat startling. He argues in effect that because of the agency relation which had previously existed Gold was under a duty not to disclose to Rathbone, King & Seeley that appellant had made false returns to them and as a result paid them a smaller premium than they were entitled to receive. He cites no case, and we are sure that none can be found, that an agent is under a legal duty not to disclose his principal's dishonest acts to the party prejudicially affected by them."

In the instant case there is no assertion of dishonesty on the part of the plaintiffs-appellants, and they characterize their own trespasses as being unintentional and therefore "innocent." The trespasses, however characterized, worked substantial economic injury to the adjoining property owners, and were in violation of Oklahoma law. Oklahoma has indicated its interest in preventing this precise injury by enacting 52 O.S. § 231:

"All natural gas under the surface of any land in this state is hereby de-

clared to be and is the property of the owners, or gas lessees, of the surface under which gas is located in its original state."

And 52 O.S. § 234:

"Any person, firm or corporation, taking more than his or its proportionate share of such gas, in violation of the provisions of this act, shall be liable to any adjoining well owner for all damages sustained thereby and subject to a penalty for each violation not to exceed five hundred dollars ($500.00), and each day such violation is continued shall be a separate offense."

To hold appellee bound by its contractual obligation to maintain silence would in this case require the court to assist the appellants in obtaining oil and gas to which they were not entitled under the above quoted sections. The appellants also urge the application of a line of Oklahoma cases which permit the recovery of well costs by production in the event of an unintentional trespass resulting from a mistaken well location. It however appears that these cases are limited to such facts, and the result is that the true owner succeeds to the well, but does not get a free well. The circumstance here is entirely different, and the reason for the doctrine does not exist.

In Singer Sewing Machine Co. v. Escoe, 179 Okl. 100, 64 P.2d 855 (1937), the defendant was accused by Singer of embezzlement. Defendant's uncle agreed to make up the loss and gave a promissory note in return for Singer's promise to conceal the crime. The Oklahoma Supreme Court held that the note given to one who knows of the commission of a crime for the purpose of compounding or concealing the crime or of preventing prosecution therefor is void. See also First National Bank of Poteau v. Allen, 88 Okl. 162, 212 P. 597 (1923), and Calloway v. Western States Lumber Co., 32 Okl. 680, 123 P. 151 (1912). These cases indicate that Oklahoma has expressed a stronger interest in the punishment of wrongful behavior than in the strict enforcement of contracts when the two interests collide. See also Heartsill v. State, 341 P.2d 625 (Okl.Cr.App.1959).

█ The act of misappropriating natural gas in Oklahoma can be either tortious or criminal (52 O.S. § 235) depending on the presence of scienter. It is clear that had the appellants known of their trespass and continued to misappropriate the gas for a substantial period, their act could have become criminal, and the appellee clearly would not have been bound by the contract. Singer Sewing Machine Co. v. Escoe, 179 Okl. 100, 64 P.2d 855; Wilshire Oil Co. of Texas v. Riffe, 409 F.2d 1277 (10th Cir.). However, the same misappropriation, minus the element of guilty knowledge, can render the wrongdoer free of criminal responsibility, but the injury worked on the third parties may be the same. It is this injury that the law has an interest in correcting. The criminal nature of the offense, such as in Singer, gives the state a clear and separate interest in voiding a contract which conceals the crime, and hampers the punishment of the offender. We do not see any indication, however, that the "criminal" as opposed to the "tortious" nature of the injury is essential to the rule in Singer, and we apply it here.

█ It is public policy in Oklahoma and everywhere to encourage the disclosure of criminal activity, and a ruling here in accordance with the argument advanced by appellants would serve to frustrate this policy. The distinction between a crime and a mere tort can often, as here, be a difference brought about by time, and knowledge. In the present case, the appellee may reasonably have felt that in adhering to the terms of its contract with the appellants it was silently watching a crime being committed or facts developing into such an act. The fact that appellants did not release appellee from its promise once it was on notice that the well was pumping gas from adjoining tracts or to have taken some action themselves may have led appellee to believe that they planned

to take advantage of the adjoining owners.

By holding that appellee breached its contract we would, in effect, be placing others similarly situated in a precarious position. A party bound by contract to silence, but suspecting that its silence would permit a crime to go undetected, would be forced to choose between breaching the contract and hoping an actual crime is eventually proven, or honoring the contract while a possible crime goes unnoticed.

It is apparent that the non-disclosure contemplated by the contract, and the relationship created by it was proper and enforceable, but here circumstances developed to cause public policy to intervene to prevent enforcement of all of the silence. Appellants rely heavily on Ohio Oil Co. v. Sharp, 135 F.2d 303 (10th Cir.), a case which we have again carefully considered, but find to be directed to other concepts not here applicable, especially the doctrine of clean hands for a claim to equitable relief.

Affirmed.