ROBERT M. GRIFFIN *vs.* CITY OF WESTFIELD
(and a companion case[1]).

Nos. 92-P-35 & 92-P-36.

Hampden. April 16, 1993. - September 21, 1993.

Present: PERRETTA. KAPLAN, & DREBEN, JJ.

*Practice, Civil*, Relief from judgment. *Contract*, Settlement agreement,
Rescission, Legality. *Municipal Corporations*, Officers and employees.

A judgment in a civil action, entered pursuant to a stipulation of dismissal,
was not void even if the stipulation was based on an illegal promise.
[327-328]
Actions seeking rescission of agreements for the settlement of two civil
proceedings were treated by this court as actions for relief from the
judgments entered in those proceedings. [328-329]
Two city employees who had been suspended from their positions after
being indicted for acts related to the performance of their public duties,
and who had entered into agreements with the city for settlement of
civil actions arising from their suspension, were not entitled to relief
from the judgments in the civil actions on the ground that the settle-
ments were based on an allegedly illegal promise on behalf of the city
that no further action would be taken on the indictments, where, if the
settlements were regarded as purely private agreements made in consid-
eration of suppression of criminal prosecutions, they would be governed
by the principle that equity will neither enforce nor abrogate such an
agreement, or where, alternatively, if the purported promise were re-
garded as an undertaking by a governmental entity, the employees had
alleged no circumstances permitting an inference that it would not be
enforced. [329-331]

CIVIL ACTIONS commenced in the Superior Court Depart-
ment on March 14, 1991.

The cases were heard by *Cortland A. Mathers*, J., on mo-
tions for summary judgment.

*Efrem A. Gordon* (*Mary A. Samberg* with him) for the
plaintiffs.

[1]Thomas E. Conlon *vs.* City of Westfield.

*Thomas A. Virgulto* (*Paul J. Casey*, Assistant City Solicitor, & *Richard T. Dolan* with him) for the defendant.

PERRETTA, J. By these actions the plaintiffs, former city of Westfield employees, seek to rescind their settlement agreements which formed the basis for stipulations of dismissal of claims brought by the city under G. L. c. 231A. The city was seeking declarations that the plaintiffs had not been validly appointed to their municipal positions, and the settlement agreements provided for their resignations. In their complaints for rescission, the plaintiffs allege that they were induced to sign the agreements by the city's illegal promise to refrain from reinstituting criminal proceedings against them. See *Commonwealth* v. *Griffin*, 404 Mass. 372, 377 (1989). On the city's motions for summary judgment brought under Mass.R.Civ.P. 56, 365 Mass. 824 (1974), the judge concluded that the plaintiffs' actions were barred by "principles of res judicata" and entered judgments for the city. For reasons other than those given by the judge, we affirm the judgments.

1. *The undisputed facts.* On June 1, 1985, the plaintiffs were suspended from their employment with the city because of indictments against them for acts related to the performance of their public duties. See G. L. c. 268A, § 25. Griffin was acquitted on one of the charges, and the remaining indictments against him and Conlon were dismissed without prejudice on the basis that they had been represented by the same attorney in their appearances before the grand jury. Fearing that the basis of the dismissals, a conflict of interest, implicitly required the suppression of the plaintiffs' testimony before the grand jury, the Commonwealth appealed the dismissals.

While the Commonwealth's appeal was pending, the plaintiff Griffin, apparently motivated by his acquittal on one of the charges and the dismissal of the remaining indictment against him, brought an action seeking an order for the removal of his suspension and the payment of the salary and benefits he claimed due under the final paragraph of

c. 268A, § 25.[2] That suit prompted the city to file, on March 1, 1989, its own action for declaratory relief challenging the legality of the original appointments of both the plaintiffs.[3]

A little over two weeks later, on March 16, 1989, the Supreme Judicial Court issued its decision reversing the dismissal of the indictments and remanding the matters for a hearing to determine whether Griffin and Conlon could meet their burden of proving that, by reason of the multiple representation, "irremediable harm has resulted and that it prevents the possibility of a fair trial." *Commonwealth* v. *Griffin*, 404 Mass. at 377. In the absence of such proof as to any of the indictments, "that indictment may stand." *Ibid.*

About three months after that decision, the plaintiffs, with the advice of their individual attorneys, entered into settlement agreements with the city and stipulated to the dismissal of the city's action challenging the validity of their appointments and Griffin's action concerning the removal of his suspension. By the terms of their settlement agreements, the city immediately lifted the plaintiffs' suspensions, and the plaintiffs immediately resigned. Retirement benefits were to be computed on the basis of the last day of each plaintiff's paid service in 1985.[4] Each agreement contained the following acknowledgement: "The parties hereto acknowledge the execution of this Agreement as their free act and deed and have executed this agreement after having read it and under-

---

[2]That paragraph, inserted by St. 1972, c. 257, reads: "If the criminal proceedings against the person suspended are terminated without a finding or verdict of guilty on any of the charges on which he was indicted, his suspension shall be forthwith removed, and he shall receive all compensation or salary due him for the period of his suspension, and the time of his suspension shall count in determining sick leave, vacation, seniority and other rights, and shall be creditable service for purposes of retirement."

[3]In the complaints brought under G. L. c. 231A, the city alleged that the Westfield city charter requires that appointments be made by the mayor and confirmed by the city council. Griffin was appointed by the city council and Conlon's appointment by the mayor was never confirmed by the city council.

[4]Conlon's last day of paid service was May 18, 1985, and Griffin's was June 6, 1985.

stood it, having been advised to do so by competent legal counsel at all relevant times, not acting under any duress or undue influence."

About a year and one-half after signing the agreements and the stipulations of dismissal, the plaintiffs brought the present actions seeking to rescind their settlement agreements. They claimed that they had been induced to enter into their agreements with the city by an illegal oral promise that "no further action would be instituted with regard to the indictments" and that, in fact, the indictments had never been "reinstated" after remand by the Supreme Judicial Court.

In moving for summary judgments, the city did not dispute the facts that promises concerning the indictments had been made by certain city officials or that further action upon the indictments had not been taken. Instead, the city argued that any oral promises concerning the indictments were irrelevant: because the plaintiffs and their attorneys knew or should have known that the city lacked actual or apparent authority to dismiss criminal indictments, such promises could not have induced them to enter into their settlement agreements.[5]

The judge determined that the alleged illegality of the promise raised questions of fact, but nonetheless allowed the city's motions for summary judgments. Applying principles of res judicata, he concluded that even assuming that the settlement agreements were based upon an illegal promise and, therefore, void, the final judgments based upon those agreements were final and binding, even if erroneous, "unless reversed under some recognized and available procedure."

2. *The underlying judgments.* Contrary to the assertion in the plaintiffs' complaints for rescission, the judgments entered pursuant to their stipulations of dismissal were not void, even if the stipulations were based upon an illegal promise. "A judgment of a court with jurisdiction stands, and is not void, unless reversed under some recognized and available procedure, even if that judgment is erroneous.

---

[5]It is not clear from the materials whether the Commonwealth participated in the making of any promise or otherwise assented to it.

*Streeter* v. *Worcester*, 336 Mass. 469, 471-472 (1957). *Moll* v. *Wakefield*, 274 Mass. 505, 507 (1931). See *Massachusetts* v. *Sheppard*, 468 U.S. 981, 990 (1984)." *Slaves of the Immaculate Heart of Mary of Saint Benedict Center, Inc.* v. *Dalton*, 397 Mass. 784, 788 n.5 (1986). See also *Bowers* v. *Board of Appeals of Marshfield*, 16 Mass. App. Ct. 29, 32 (1983).

Had the matter ended with the judge's granting of the city's motions for summary judgment, we might have affirmed the judgments on the basis of his reasoning on the papers then before him. See, e.g., *Nagle* v. *O'Neil*, 337 Mass. 80 (1958); *Thibbitts* v. *Crowley*, 405 Mass. 222, 226-227 (1989). The plaintiffs, however, quickly sought reconsideration of the judge's order and articulated, for the first time, their position with clarity: their complaints for rescission were independent actions seeking relief from void judgments pursuant to Mass.R.Civ.P. 60(b)(4) and (6), 365 Mass. 828-829 (1974). Rule 60(b) expressly provides that "[t]his rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment . . . . and the procedure for obtaining any relief from a judgment shall be by motion . . . or by an independent action." *Id.* at 829. Apparently attempting now to cover all the bases, the plaintiffs also brought motions under rules 60(b)(4) and (6), seeking to set aside the underlying judgments entered on the city's action against them pursuant to the stipulations of dismissal. The motions for reconsideration were denied shortly before a different judge denied the rule 60(b) motions.[6]

Because the plaintiffs did not appeal from the denial of their rule 60(b) motions on the underlying judgments, see note 6, *supra*, and because they have no right to maintain duplicative proceedings, see *Goodyear Tire & Rubber Co.* v.

---

[6]Although the plaintiffs have appealed from the summary judgments and the denials of their motions for reconsideration, they have not appealed from the denials of their rule 60(b) motions filed on the underlying judgments of dismissal of the city's action. Moreover, there is nothing in the record before us to indicate whether Griffin took any steps to set aside the judgment entered pursuant to his stipulation of dismissal of his action against the city.

*H. K. Porter Co.*, 521 F.2d 699 (6th Cir. 1975), we do not consider the rule 60(b) motions and, instead, confine ourselves to the summary judgments and the denials of the motions for reconsideration. Further, because the plaintiffs expeditiously sought reconsideration, we will decide the matter as if they had made it clear from the outset that, by their complaints for rescission, they were exercising their option to proceed by independent actions in seeking relief from the underlying judgments. See, e.g., *Air Purchases, Inc.* v. *Mechanical Coordinators Corp.*, 21 Mass. App. Ct. 632, 633 (1986). Put another way: having extricated the plaintiffs from a procedural morass of their own making, we consider their claim that they were induced into signing the settlement agreements by an illegal, unenforceable promise of the city to take no further action in respect to the indictments against them.

3. *The promise.* In allowing the city's motions for summary judgments on the basis of the finality of the underlying judgments, the judge noted that the "alleged illegality of consideration . . . raises questions of fact." For purposes of our decision we will assume the truth of the plaintiffs' allegations and overlook the city's vague denials of the promise which it deems irrelevant even if made.

There is an abundance of support for the basic proposition that "a *private* agreement made in consideration of the suppression of a criminal prosecution will neither be enforced nor abrogated by a court of equity. That doctrine is founded upon the public policy that the course of justice cannot be defeated for the benefit of an individual" (emphasis supplied). *Berman* v. *Coakley*, 243 Mass. 348, 350 (1923), and cases therein cited. If, because of the uncertainty concerning the Commonwealth's assent to any promise made by the city, we treat the promise as a "private agreement," this proposition would preclude the granting of relief to the plaintiffs. There is, however, as noted in *Berman, supra,* an exception to this general rule. "[W]here the parties are not in equal fault as to the illegal element of the contract, or, to use the phrase of the maxim, are not in pari delicto, and where there are elements of public policy more outraged by the conduct

of one than of the other, then relief in equity may be granted to the less guilty."

Consideration of the exception to the rule gains the plaintiffs nothing. As of the time the parties entered into their agreements, the criminal proceedings against the plaintiffs had not been resolved in their favor. Indeed, the dismissal of the indictments against them had been vacated, and the burden was placed upon them to show, as to each indictment, "that irremediable harm has resulted and that it prevents the possiblity of a fair trial." *Commonwealth* v. *Griffin,* 404 Mass. at 377. Confronted with the facts that indictments were pending against two of its employees for misconduct related to the performance of their public duties, that their appointments to their municipal positions were of questionable validity, and that one of them, Griffin, was seeking to return to work with full restoration of his back salary and benefits, the city took legal action.[7]

Accepting the truth of the plaintiffs' allegations, that they were induced into their resignations by a promise that no further action would be "instituted" on the indictments against them, we do not view the city's conduct as either reprehensible or destructive of the public interest. Nor do we think the alleged promise lopsided. If the plaintiffs surrendered the right to possible reinstatement with back pay and benefits, they were relieved of the risk of conviction and punishment if they could not sustain their burden of proof on any motion to dismiss the indictments. Moreover, if convicted, the plaintiffs would not be entitled to reinstatement with lost pay and benefits irrespective of the validity of their appointments.

The reason courts will generally not enforce a "private agreement made in consideration of the suppression of a criminal prosecution," *Berman* v. *Coakley,* 243 Mass. at 350, is that it is in the public interest "to encourage the disclosure of criminal activity," *Lachman* v. *Sperry-Sun Well Survey-*

---

[7]In its materials in support of its motions for summary judgment, the city included a memorandum of decision in an unrelated case in the Superior Court in which the city's position on appointments in accordance with the city charter was accepted.

*ing Co.*, 457 F.2d 850, 853 (10th Cir. 1972). See also 14 Williston, Contracts § 1718 (3d ed. 1972) ("Any bargain, express or implied, having for its purpose or consideration the concealment or compounding of a crime is unlawful. The cases so holding are myriad, and have arisen in virtually every common-law jurisdiction. They are expressive of the public policy which governs the administration of justice"). Were the rule otherwise, "[a] party bound by contract to silence, but suspecting that its silence would permit a crime to go undetected, would be forced to choose between breaching the contract and hoping an actual crime is eventually proven, or honoring the contract while a possible crime goes unnoticed." *Lachman* v. *Sperry-Sun Well Surveying Co.*, 457 F.2d at 854.

As alleged by the plaintiffs, however, the promise was not a secret agreement between individuals. It was a promise which they attribute to a governmental entity, the city. "Surely the government is not compounding a crime whenever it decides not to prosecute someone." *United States* v. *McBride*, 571 F. Supp. 596, 608 (S.D. Tex. 1983). To the contrary, a governmental promise not to prosecute is, depending upon the circumstances, enforceable. See *Commonwealth* v. *Doe*, 412 Mass. 815, 818-819 (1992); *Doe* v. *District Attorney for the Plymouth Dist.*, 29 Mass. App. Ct. 671, 673-674 (1991). The plaintiffs have not alleged any circumstances from which it could be inferred that the purported promise would not be enforced should action on the indictments now be attempted.

Because the plaintiffs cannot prevail on their only claim, that the promise offends public policy and is unenforceable as matter of law, they have failed to advance any basis justifying them to relief from the underlying judgments.

> *Judgments affirmed.*
> *Orders denying motions for*
> *reconsideration affirmed.*