No. 128,014

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BRANDEN WILLIAMS,
*Appellee*,

v.

BARBARA GREENSTEIN and
NICHOLE ANDERSON,
*Appellants.*

SYLLABUS BY THE COURT

1.

Under the Kansas Public Speech Protection Act, K.S.A. 2024 Supp. 60-5320, a communication, even if motivated in part by a significant personal concern or interest, may be made in connection with an issue of public interest and thus be protected under 60-5320(c)(4)'s definition of the exercise of the right of free speech.

2.

Although the Kansas Legislature stated in K.S.A. 2024 Supp. 60-5320(b)—the statute's statement of purpose—its concern with petitioning and speaking freely in connection with a public issue or issue of public interest, it does not permit us to read the public issue or interest requirement into the operative section of the petition provision in 60-5320(c)(5), which contains no such requirement.

3.

A communication made in or pertaining to a judicial proceeding is protected by the Kansas Public Speech Protection Act even if no public issue is involved and serves as a proxy for the public issue or interest the Act requires for protection of free speech communications.

1

Appeal from Coffey District Court; ERIC W. GODDERZ, judge. Oral argument held August 5, 2025. Opinion filed October 17, 2025. Reversed and remanded.

*Donald N. Peterson*, of Graybill & Hazlewood, LLC, of Wichita, for appellant.

*Richard W. Martin Jr.*, of Martin Law Group, LLC, of Leawood, for appellee.

Before GARDNER, P.J., COBLE and BOLTON FLEMING, JJ.

GARDNER, J.: Barbara Greenstein and Nichole Anderson appeal the Coffey County District Court's denial of their motion to strike Branden Williams' petition for claims of defamation, malicious prosecution, and civil conspiracy. Williams' claims related to an email Greenstein and Anderson had sent to Williams' probation officer regarding his diversion agreements for DUI in other counties. Greenstein and Anderson moved to strike Williams' petition under the Kansas Public Speech Protection Act, K.S.A. 2024 Supp. 60-5320. They argue that the district court erred by denying their motion to strike after finding their speech unprotected. After careful review, we agree with Greenstein and Anderson. We thus reverse the district court's denial of their motion to strike Williams' petition and remand the case for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2023, Williams sued Anderson and Greenstein (Anderson's mother) alleging defamation, malicious prosecution, and civil conspiracy. That suit stems from the following events.

In February 2021, Williams was charged in Coffey County with several offenses, one of which was driving under the influence of alcohol (DUI). Before the Coffey County DUI charge was resolved, Williams pleaded guilty in April 2021 to another DUI charge in Sedgwick County and was granted one year's probation.

2

In July 2021, the Coffey County District Court approved a diversion agreement between Williams and the State on the Coffey County DUI charge. The charge indicated it was a "first offense," and the diversion journal entry made no reference to the Sedgwick County case.

Then, in December 2021, Williams received a "deferred judgment" in the Washington County District Court in Iowa. That judgment stated that based on Williams' plea, he was "guilty of the crime of the charge of Operating While Intoxicated, First Offense." The Iowa district court granted him probation and ordered that if he successfully completed it, then he would be "discharged from probation without the entry of judgment." According to the Washington County Attorney, Williams' plea in this case did not equate to a conviction in the State of Iowa—"[i]t was merely a deferred judgment and can be expunged from the defendant's record after he successfully completes the terms of the Court's order. As part of the agreement, the defendant's driving privileges were not to be further revoked (since it was not a conviction)."

Greenstein somehow became aware of Williams' April, July, and December DUI proceedings and was concerned that Williams sometimes drove the daughter shared by Anderson and Williams (Greenstein's granddaughter). She believed she had "the right to make sure that the appropriate officials who are handling Williams' DUI cases [were] aware of all information about his other cases so they [could] make fully informed decisions." So she emailed Williams' probation officer in his Sedgwick County DUI case to make him aware of Williams' other DUI proceedings.

The email, which we refer to as Greenstein's email for purposes of convenience only, stated:

> "As Probation Officer for the above referenced Defendant, Branden Luke Williams, you are aware that he pled guilty to the charge of DUI and is serving one year probation in the District Court of Sedgwick County, Kansas, Case Number 2020 TR 2369. While on probation, he also pled guilty to the charge of DUI and is on probation for one year in the **Washington County District Court of Iowa Case Number OWIN011939**. In addition, he is on diversion for Driving Under the Influence in **Coffey County, Kansas Case Number CF-2021-TR-000146** along with other traffic violations.
>
> "Please find attached copies of the Order of Disposition of Operating While Intoxicated, First Offense in the Washington County, Iowa and a copy of the DUI Journal Entry and Order for Stay of Proceedings in Coffey County, Kansas. As you can see, the defendant repeatedly violated the terms of his probation.
>
> "Thank you for your timely attention to this matter."

The email attached the documents it referenced from Iowa and Coffey County.

As a result of Greenstein's email, the Coffey County Attorney moved to lift the stay it had entered under the diversion agreement in Williams' Coffey County DUI case. That motion stated that one term of Williams' diversion agreement was that he was not to violate any laws, yet he had been convicted of DUI in Iowa in December 2021. In May 2022, the District Court of Coffey County lifted the stay and issued an arrest warrant for Williams, who was later arrested.

Williams and Anderson share a young child. Although our record contains little information about it, litigation over custody and parenting time of their child was apparently ongoing in Riley County when Greenstein sent her email. While the motion to lift the stay was pending in Coffey County and the warrant was unexecuted, Anderson

4

successfully argued in the Riley County custody case that Williams had a warrant out for his arrest and could be arrested at any time so his parenting time should be supervised. The district court agreed and limited Williams' parenting time to supervised only. But a few months later, the State withdrew its motion to lift the stay of criminal proceedings. Although we have no record of why the motion was withdrawn, Williams asserts that it was because the district court found no probable cause to lift the stay of the proceedings against him.

Williams then sued Greenstein and Anderson for defamation, malicious prosecution, and civil conspiracy, claiming that they had published false statements about him by telling law enforcement authorities that he had been convicted of DUI in Iowa.

As one of her defenses to Williams' claims, Greenstein answered that her email was protected by the Act, so Williams' petition should be struck under K.S.A. 2024 Supp. 60-5320(d). Then, Greenstein and Anderson moved to strike Williams' claims under the Act, arguing that their email to law enforcement officials was a valid exercise of their First Amendment rights. See K.S.A. 2024 Supp. 60-5320(d). Williams responded that Greenstein and Anderson could not carry their burden to make a prima facie showing that their communication was protected. He argued that their email was not "'reporting a crime,'" which is protected speech, but falsely stated that a DUI conviction had occurred. See generally K.S.A. 2024 Supp. 60-5320(c)(5).

During the hearing on the motion to strike, Greenstein and Anderson argued that their email was protected under the Act's right of free speech and right to petition provisions. Williams responded that both provisions require the communication to be about a matter of public concern, yet this email related solely to a personal matter. Greenstein and Anderson countered that just because one has a personal concern in a matter does not render a communication unprotected by the Act.

5

The district court agreed with Williams and denied Greenstein and Anderson's motion to strike, finding that the Act does not apply to this type of speech:

"[T]he Court does not believe that the [Act] applies in this particular case at all. This is a stretch on this motion to strike to try to apply that particular statute to what happened in this particular case.

"The Court does not believe that the type of communication that occurred in this particular case is the type that's covered by the Act. Nor does the Court—I think probably the more to the point, the Court does not believe that the information that may or may not have been transferred from [Greenstein and Anderson] to the prosecutor in Coffey County concerned any public issue or a matter of public interest.

"It has nothing to do with the health and safety of the public. It has nothing to do with environmental, economic or community well-being. It has nothing to do with the government. It has nothing to do with any particular public official or public figure. Nor does it have anything to do with the good, product or service in the marketplace. None of those.

"That's what the [A]ct was for to protect people who are either stating something out loud, protesting, whatever the case may be in exercising their right to free speech on a public issue or a matter of public interest.

"The fact that a prosecutor may have been involved doesn't morph the case, this case and what happened, into some type of a matter of public interest. It's not and the [A]ct does not apply. The Court's going to deny the motion to strike.

"Whether or not this particular case has any merit, uh, going forward, that's something for a different day to be decided."

Greenstein and Anderson timely bring this interlocutory appeal of the district court's denial of their motion to strike, as K.S.A. 2024 Supp. 60-5320(f) permits.

6

DID THE DISTRICT COURT ERR BY DENYING THE MOTION TO STRIKE UNDER THE KANSAS PUBLIC SPEECH PROTECTION ACT?

On appeal, Greenstein and Anderson argue that the district court erred by denying their motion to strike under K.S.A. 2024 Supp. 60-5320(d) because their communication to Williams' probation officer was a protected communication under the Act. Williams counters that the district court correctly denied the motion to strike because their speech was a matter of private concern, not public interest, and is thus unprotected by the Act.

*An Overview of the Act*

We begin by reviewing the relevant statutes. In 2016, the Kansas Legislature enacted the Act. K.S.A. 60-5320; L. 2016, ch. 58, § 1. The Act falls under the umbrella of "anti-SLAPP" statutes enacted across the country. "SLAPP" stands for "'strategic lawsuits against public participation.'" *Kansas Governmental Ethics Comm'n v. Shepard*, 65 Kan. App. 2d 1, 4-5, 556 P.3d 890 (2024). Anti-SLAPP statutes are intended to prevent meritless lawsuits that chill free speech. 65 Kan. App. 2d at 4-5.

The stated purpose of the Act is to "encourage and safeguard the constitutional rights of a person to petition, and speak freely and associate freely, in connection with a public issue or issue of public interest to the maximum extent permitted by law while . . . protecting the rights of a person to file meritorious lawsuits for demonstrable injury." K.S.A. 2024 Supp. 60-5320(b); see *T&T Financial of Kansas City v. Taylor*, No. 117,624, 2017 WL 6546634, at *4 (Kan. App. 2017) (unpublished opinion) (stating Act "provides a procedural remedy early in the litigation for those parties claiming to be harassed by a SLAPP lawsuit"). The Act is "applied and construed liberally to effectuate its general purposes." K.S.A. 2024 Supp. 60-5320(k).

Under the Act, "[a] party may bring a motion to strike the claim if a claim is based on, relates to or is in response to a party's exercise of the right of free speech, right to petition or right of association." K.S.A. 2024 Supp. 60-5320(d). Under the Act, a "claim" is "any lawsuit, cause of action, claim, cross-claim, counterclaim or other judicial pleading or filing requesting relief." K.S.A. 2024 Supp. 60-5320(c)(1). Williams' defamation lawsuit was such a claim.

When moving to strike the claim, the movant "has the initial burden of making a prima facie case showing the claim against which the motion is based concerns a party's exercise of the right of free speech, right to petition or right of association." K.S.A. 2024 Supp. 60-5320(d). Prima facie evidence is defined as "'evidence sufficient to sustain a verdict in favor of the issue it supports, even though it may be contradicted by other evidence.'" *Becker v. Knoll*, 291 Kan. 204, 206, 239 P.3d 830 (2010). If the movant meets that burden, then the burden shifts to the responding party, here Williams, "to establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case." K.S.A. 2024 Supp. 60-5320(d). If that burden is sustained, the court must deny the motion. K.S.A. 2024 Supp. 60-5320(d).

The district court held that Greenstein and Anderson failed to meet their initial burden to strike Williams' lawsuit based on their exercise of their right of free speech or right to petition, and the court denied their motion to strike.

When reviewing a district court's order granting or denying a motion to strike under the Act, an appellate court's review is de novo because—like a ruling on a summary judgment motion—the appellate court is in the same position as the district court to answer the legal questions presented. *Doe v. Kansas State University*, 61 Kan. App. 2d 128, 136-37, 499 P.3d 1136 (2021). To the extent resolution of Greenstein and Anderson's claims require statutory interpretation, this court's review is also unlimited. *Nicholson v. Mercer*, 319 Kan. 712, 714, 559 P.3d 350 (2024); *Shepard*, 65 Kan. App. 2d at 6.

8

*Greenstein and Anderson's Prima Facie Showing*

To make a prima facie showing, the movant must show their speech falls within the type of speech protected by the Act. See K.S.A. 2024 Supp. 60-5320(d); *Doe*, 61 Kan. App. 2d at 144. It is undisputed that Greenstein's email to Williams' probation officer falls within the Act's definition of "communication." See K.S.A. 2024 Supp. 60-5320(c)(2) (defining "communication" as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, or electronic"). Appellants argue that their communication—emailing Williams' probation officer about his other DUI diversion agreements—was an exercise of their First Amendment rights to free speech and to petition. Greenstein and Anderson assert that their communication is protected under three subsections of the Act:

1.  K.S.A. 2024 Supp. 60-5320(d)—the exercise of the right of free speech;
2.  K.S.A. 2024 Supp. 60-5320(c)(5)(A)(i)—"[a] communication in or pertaining to . . . a judicial proceeding";
3.  K.S.A. 2024 Supp. 60-5320(c)(5)(E)—"any other communication or conduct that falls within the protection of the right to petition the government under the constitution of the United States or the constitution of the state of Kansas"; and
4.  their general First Amendment rights.

*Does the speech fall under K.S.A. 2024 Supp. 60-5320(d)'s "exercise of the right of free speech"?*

As stated above, "[a] party may bring a motion to strike the claim if a claim is based on, relates to or is in response to a party's exercise of the right of free speech, right to petition or right of association." K.S.A. 2024 Supp. 60-5320(d). Williams does not contend that his lawsuit or claim is not "based on" or "in response to" Greenstein's email. He seeks redress from Greenstein and Anderson for their communicative conduct. We

9

thus focus on whether Greenstein's email was an exercise of the right of free speech or petition, as no right of association is asserted.

1. *Does the Act protect speech motivated by personal interest that is also in connection with an issue of public interest?*

Williams contends that the email pertains to private disputes between Greenstein and Williams arising from their familial relationship and custody issues involving Williams and Anderson's child and was made for the purpose of revoking Williams' probation. Thus, he contends, the Act is inapplicable. To successfully make a prima facie showing, Greenstein and Anderson's speech must be in connection with a matter specified in the statutory definition of "public issue or issue of public interest." See K.S.A. 60-5320(c)(7). Williams asserts that the district court properly found that the communications in the email did not meet this test because the email related to a purely personal matter.

The motion to strike included Greenstein's affidavit which spoke to her motive in sending the email:

> "As a grandparent whose granddaughter is sometimes driven around by Williams, I believe I have the right to make sure that the appropriate officials who are handling Williams' DUI cases are aware of all information about his other cases so they can make fully informed decisions."

Regardless of any public interest, Greenstein and Anderson no doubt had a personal concern about Williams driving with Greenstein's grandchild and Anderson's child because of his DUI status. But nothing in the Act directs or permits us to consider at this stage of the analysis the speaker's motivation or purpose. Whether they had a "valid" purpose or a mixed motive or malicious intent matters not in our determination whether the speech was in connection with a public issue or issue of public interest. See K.S.A.

10

2024 Supp. 60-5320(c)(4); *Doe*, 61 Kan. App. 2d at 142 (finding none of the definitions of protected communications address the motive or merits of a communication, the panel simply addresses its content).

Two definitions of protected communications are relevant to this analysis. 60-5320(c)(4) defines "exercise of the right of free speech" as "a communication made in connection with a public issue or issue of public interest." And 60-5320(c)(7) defines a "public issue or issue of public interest" as an issue related to "[h]ealth or safety"; "environmental, economic or community well-being"; "the government"; "a public official or public figure"; or "a good, product or service in the marketplace."

"Our Legislature did not limit the scope of the Kansas anti-SLAPP statute to activity protected by constitutional law. Instead, . . . [the Act] 'spelled out the kinds of activity it meant to protect,' then mandated that its statutory language be liberally construed." *Doe*, 61 Kan. App. 2d at 144. This broad scope is reinforced by the Act's expansive definition of "exercise of the right of free speech" as "a communication made *in connection with* a public issue or issue of public interest." (Emphasis added.) K.S.A. 60-5320(c)(4). Thus our anti-SLAPP statute does not merely apply to statements and conduct that are speech on "public issue[s]" or on "issue[s] of public interest." And the Act contains no "public forum" requirement. Nothing in the statute categorically excludes any particular type of communication from its operation. Rather, the plain language of the Act seemingly protects even private communications made in connection with matters of public interest. See 60-5320(c)(4).

Williams contends that because Greenstein and Anderson had a personal interest in his DUIs and his driving status, their communication was not on a public issue or public interest. Williams invites us to find that only a communication in connection with a wholly public interest is protected under the Act. Yet he cites no authority for this assertion. We decline this invitation, as the language of the Act does not limit one's

11

exercise of the right of free speech to a communication made *solely* in connection with a public issue or issue of public interest. 60-5320(c)(4). And we must refrain from reading language into a statute that is not readily found in its words. *Schmidt v. Trademark, Inc.*, 315 Kan. 196, 200, 506 P.3d 267 (2022). No language in the Act suggests that a speaker's personal interest in a topic precludes a communication from being made in connection with a public issue or issue of public interest.

The two interests are not mutually exclusive. See, e.g., *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 23-24, 53 Cal. Rptr. 3d 752 (2007) (plastic surgery patient's website created to relate her bad experience with well-known surgeon concerned "matter of public interest" within meaning of anti-SLAPP statute); *Averill v. Superior Court*, 42 Cal. App. 4th 1170, 1174-75, 50 Cal. Rptr. 2d 62 (1996) (free speech provision in anti-SLAPP law protected both public and private speech by the personally-interested defendant opposing a homeless shelter that plaintiff proposed to build in her neighborhood). Still, we agree that "simply because a general topic is an issue of public interest, not every statement somewhat related to that subject is also a matter of public interest within the meaning of [the anti-SLAPP Act]." *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1253, 217 Cal. Rptr. 3d 234 (2017).

Greenstein and Anderson argue, contrary to Williams, that we should find that only communications made in connection with wholly personal grievances are unprotected, citing the public concern test in *Dishnow v. School Dist. of Rib Lake*, 77 F.3d 194, 197 (7th Cir. 1996):

> "We explained that when the Supreme Court in its cases establishing and bounding the rights of public employees to exercise free speech limited those rights to speech on matters of 'public concern,' they did not mean matters of transcendent importance, such as the origins of the universe or the merits of constitutional monarchy; they meant matters in which the public might be interested, as distinct from wholly personal grievances—which whether or not protected by the First Amendment are too remote from its central concerns

12

to justify judicial interference with the employment relation, *Connick v. Myers,* 461 U.S. 138, 147, 103 S. Ct. 1684, 1690, 75 L.Ed.2d 708 (1983)—and casual chit-chat, which is not protected by the First Amendment at all. *Swank v. Smart*, 898 F.2d 1247, 1251 (7th Cir.1990)."

We decline to apply this public concern test, however, because it is properly used to determine whether a government employer has violated an employee's free-speech rights, not to determine a private litigant's free-speech rights. See *Van Deelen v. Johnson*, 497 F.3d 1151, 1159 (10th Cir. 2007) (public concern test properly applies to claims brought by government employees but it "enjoys no place in the analysis of a private citizen's First Amendment claims").

We recognize that some anti-SLAPP cases from New York apply a similar test, construing "'public interest'" broadly as "'any subject other than a purely private matter.'" See, e.g., *Hamelin v. Patterson*, 85 Misc. 3d 1272(A), 231 N.Y.S.3d 393 (N.Y. Sup. Ct. 2025) (unpublished opinion) (defendant's speech on LinkedIn was made regarding a matter of public interest, as she was informing the public of her concerns that plaintiff might be perpetrating a scam based on her dealings with him, not a purely private matter); *215 W. 84th St. Owner LLC v. Bailey*, 217 A.D.3d 488, 488-89, 191 N.Y.S.3d 368 (2023) (statements by defendants to the media concerning plaintiff's harassment of the sole holdout tenant to get him to vacate his apartment so plaintiff, who was a large real estate developer, could develop the property into a luxury condo building was free speech in connection with an issue of public interest, rather than a purely private matter); *Aristocrat Plastic Surgery P.C. v. Silva*, 206 A.D.3d 26, 32, 169 N.Y.S.3d 272 (2022) (online negative review of doctor was a matter of public concern and not a purely private matter because it provided information to potential patients). But that construction is based on a statutory definition unlike ours. See New York Civil Rights Law § 76-a(1)(d) ("'Public interest' shall be construed broadly, and shall mean any subject other than a purely private matter.").

The parties suggest no consensus among other jurisdictions having similar public interest requirements in their anti-SLAPP statutes on a test to measure a speaker's private interest against the speaker's public interest, and we find none. Instead, we rely on the plain language of our anti-SLAPP Act to determine whether a communication is protected. Greenstein's email reported Williams' diversion agreements for DUI charges in other jurisdictions to Williams' Sedgwick County probation officer to make her aware of them. This communication was a matter of concern to many people who drive on public highways and did not merely express the parochial interests of the parties. Compare *Balliet v. Kottamasu*, 76 Misc. 3d 906, 175 N.Y.S.3d 678 (N.Y. Civ. Ct. 2022) (defendant's statements about alleged sexual flirtation amounted merely to gossip, not to statements on issues of public interest or concern, and were made only to other roommates, so defendant was not entitled to anti-SLAPP law's protections), *aff'd* 81 Misc. 3d 132(A), 200 N.Y.S. 3d 647 (N.Y. App. Term 2023), with *Doe*, 61 Kan. App. 2d at 130-31 (Defendant's statements to another university official regarding whether Plaintiff had been sanctioned by the university were in connection with a public issue and an issue of public interest, i.e., health, safety, and community well-being of university students and the protection of university students from stalking and other unwanted behavior, so were protected under the free speech provision of the Kansas Act.).

Greenstein's email falls within the "health or safety" category because that communication to Williams' probation officer helps protect the motoring and other public from Williams driving under the influence again. See 60-5320(c)(7)(A), (B). The public has an interest in being protected from drivers operating their vehicles while intoxicated, and especially a driver who is a repeat offender. See K.S.A. 8-1567(b) (elevating the presumptive sentence imposed for each subsequent DUI). Moreover, the Kansas Legislature requires that diversion agreements for DUI—not only convictions—be electronically reported for later criminal history scoring purposes, which underscores the public interest in the existence of diversion agreements. K.S.A. 8-1567(h). Cf. *State v. Mertz*, 258 Kan. 745, 757-58, 907 P.2d 847 (1995) (The purpose of Kansas' implied

14

consent statute is "to protect the health and safety of Kansas citizens by reducing the incidences of drinking and driving, alcohol-related crashes, injuries, and fatalities."); *State v. Chacon-Bringuez*, 28 Kan. App. 2d 625, 631, 18 P.3d 970 (2001) (Breath tests are tools that law enforcement may use to protect the health and safety of citizens by determining whether an arrest for DUI should be made.).

Drunk driving remains a leading cause of highway deaths and still poses a substantial threat to public safety. *Birchfield v. North Dakota*, 579 U.S. 438, 464, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016). Alerting a DUI probationer's probation officer to his other recent DUI proceedings serves the public's interest in health or safety. See *State v. Ryce*, 303 Kan. 899, 958-59, 368 P.3d 342 (2016) ("[W]e have repeatedly noted the State's compelling overall interests in both combating and penalizing drunk driving and in protecting public safety on the roads."), *adhered to on reh'g* 306 Kan. 682, 396 P.3d 711 (2017); *State v. Price*, No. 119,411, 2019 WL 3367891, at *8 (Kan. App. 2019) (unpublished opinion) ("[A] key purpose of K.S.A. 2015 Supp. 8-1567(a)(3) is to deter drunk driving, so the statute reflects a compelling public policy."); *Ingersoll v. Palmer*, 43 Cal. 3d 1321, 1337, 743 P.2d 1299 (1987) ("Drunk driving is not merely a crime, it is a serious public safety problem.").

Based on the plain language of the Act, as explained above, we find that Greenstein's email, informing Williams' probation officer of his other DUI charges, was made in connection with an issue of public interest even if it was motivated by a significant personal concern or interest. It is thus protected under K.S.A. 2024 Supp. 60-5320(c)(4)'s definition of the exercise of the right of free speech as "a communication made in connection with a public issue or issue of public interest."

2. *Does alleged falsity matter?*

Williams next argues that Greenstein and Anderson failed to establish a prima facie case that their speech was protected under the Act because their communication was a false statement that Williams had been convicted. Williams contends that Greenstein and Anderson mischaracterized the Iowa diversion proceedings by stating that Williams had pleaded guilty to the charge of DUI and was on probation for a year in Iowa.

Yet under the first step of K.S.A. 2024 Supp. 60-5320(d), we need not determine the truth or falsity of the communication. See *Doe*, 61 Kan. App. 2d 128, Syl. ¶ 3, 141-42 (anti-SLAPP statute did not require university or administrator to establish information disclosed to student's new college was true to establish prima facie case that student's claims concerned university and administrator's exercise of the right of free speech, right to petition, or right of association). Rather, the movant must show only that the objected-to speech falls within one of the Act's defined and broadly construed categories. 61 Kan. App. 2d at 142 (finding none of the definitions of protected communications address the motive or merits of a communication; they simply address its content). Williams has not shown that false statements generally are categorically unprotected under the Act.

We thus are not concerned with the veracity of this communication until the second step of 60-5320(d). And then, any claimed falsity of the communication is an issue which Williams may raise and support in discharging his burden to provide a prima facie showing of the merits of his defamation or other claims. For that reason, Williams' assertions that the email falsely conveyed that he had been convicted of a crime do not sway our decision.

3. *Are allegations of a crime unprotected?*

Williams also argues that allegations of criminal activity are unprotected under the Act, citing *United Capital Management of Kansas, Inc. v. Nelson*, No. 22-4408-JWB, 2022 WL 17583195, at *1 (D. Kan. 2022) (unpublished opinion). In that case, United Capital Management (UCM) brought claims of defamation and tortious interference with business expectations against Nelson. Nelson's communication included allegations of criminal conduct, such as:

> "that the FBI and other law enforcement agencies were investigating Chad Koehn and UCM for criminal actions, that Mr. Koehn was the subject of multiple sexual harassment claims, that Mr. Koehn was a pedophile, that Mr. Koehn was involved in a human [trafficking] ring, that Mr. Koehn had been involved in an international money laundering scheme . . . , that Mr. Koehn had falsified documents filed with the SEC, that Mr. Koehn was under criminal investigation, that lawsuits were being filed against Mr. Koehn throughout the United States, that Mr. Koehn had hired a hit team to kill Mr. Nelson, Mr. Nelson's children and his parents, that Plaintiffs' client, whom Mr. Nelson contacted, figured prominently in the ongoing investigations and would be a named party in any pending SEC and/or criminal actions against the Plaintiffs, and that the Plaintiffs were somehow engaged in criminal activities adverse to the United States of America." 2022 WL 17583195, at *4.

Nelson moved to strike UCM's complaint under the Act, asserting that the complaint alleged the speech was based on his First Amendment rights. The Kansas Federal District Court disagreed and held that the comments regarding UCM, its employees, and associates were not protected. 2022 WL 17583195, at *5. The federal district court agreed that UCM provides a financial service, so some comments could be considered within the protection of the Act because Nelson's comments about UCM generally implicate UCM in some type of criminal wrongdoing alongside Mr. Koehn. "But it is not clear how that alleged wrongdoing relates to the financial services UCM provides to the marketplace. In fact, any specific allegations about criminal wrongdoing

17

are directed at Mr. Koehn rather than UCM and it is unclear how the entity UCM is implicated at all." 2022 WL 17583195, at *4. The problem was thus the lack of specific allegations about UCM's acts.

Contrary to Williams' assertions, *United Capital Management* does not establish the broad proposition that allegations of criminal activity are unprotected under the Act. But even if it does, this case is distinguishable. Greenstein and Anderson were not merely privately alleging criminal activity. Cf. *Nelson v. Ardrey*, 231 A.D.3d 179, 185, 216 N.Y.S.3d 646 (2024) (comments on Facebook post related to birthday of plaintiff's daughter were private allegations of crimes and were not within the sphere of public interest). Rather, their speech was to a public officer and regarded official criminal proceedings and charges and documents that were accessible in the public record, not unsubstantiated claims of criminal activity, as in *United Capital Management*. The connection to the public interest is much more direct here.

Williams tacitly acknowledges that it is in the public interest to report crimes. We agree, as the Kansas Supreme Court has long recognized:

> "It has long been recognized as public policy to encourage citizens to report crimes. See *In re Quarles and Butler,* 158 U.S. 532, 535-36, 15 S. Ct. 959, 39 L. Ed. 1080 (1895). The Tenth Circuit has stated '[i]t is public policy . . . everywhere to encourage the disclosure of criminal activity.' *Lachman v. Sperry-Sun Well Surveying Company*, 457 F.2d 850, 853 (10th Cir.1972). The Kansas Legislature's provision for an 'informer's privilege,' K.S.A. 60-436, is 'based upon sound public policy to encourage those who have knowledge of crime to come forward and give information to law enforcement officers without fear of disclosure.' *State v. Cohen*, 229 Kan. 65, 69, 622 P.2d 1002 (1981)." *Palmer v. Brown*, 242 Kan. 893, 899, 752 P.2d 685 (1988).

Even so, Williams asserts that Greenstein's email did not ask law enforcement to investigate Williams' acts and was concerned only with charging, conviction, and

18

sentencing, which is outside the realm of public interest. We find this to be a distinction without a difference. The email notified Williams' probation officer of Williams' other DUI diversion agreements and invited the officer to investigate them to determine whether Williams had violated the terms and conditions of his DUI probation.

But even if the email were solely concerned with charging, convicting, and sentencing, that would not preclude it from being connected with an issue of public interest. "The commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions . . . are without question events of legitimate concern to the public." *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492, 95 S. Ct. 1029, 43 L. Ed. 2d 328 (1975); *Bailey v. ISD No. 69 of Canadian County OK*, 896 F.3d 1176, 1181 (10th Cir. 2018) ("[S]entencing proceedings are at the core of the public administration of justice, and are therefore quintessentially matters of public concern."); *Best v. Berard*, 776 F. Supp. 2d 752, 756-58 (N.D. Ill. 2011) (plaintiff's arrest for driving with suspended license was matter of public concern barring intentional infliction of emotional distress claim under State's Right of Publicity Act). Greenstein's email related to judicial proceedings arising from a DUI probationer's subsequent arrests or prosecutions for DUI and was thus connected to an issue of public safety. "Public policy requires that citizens in a democracy be protected from reprisals for performing their civi[c] duty of reporting infractions of rules, regulations, or the law pertaining to public health, safety, and the general welfare." *Palmer*, 242 Kan. at 900.

Accordingly, the communication here involves the public's health or safety. Greenstein and Anderson satisfied their burden under K.S.A. 2024 Supp. 60-5320(d) to make a prima facie case that their email was "a communication made in connection with a public issue or issue of public interest," regardless of their co-existing personal interest or the alleged falsity of their speech. K.S.A. 2024 Supp. 60-5320(c)(4). Their communication is thus protected under the Act as the exercise of the right of free speech.

4.  *Is the email protected under the Act's right to petition provision?*

Greenstein and Anderson also argued unsuccessfully to the district court that their communication was protected under the right to petition. K.S.A. 2024 Supp. 60-5320(c)(5) broadly defines "exercise of the right to petition" as:

"(A) A communication in or pertaining to:

(i) A judicial proceeding;

(ii) an official proceeding, other than a judicial proceeding, to administer the law;

(iii) an executive or other proceeding before a department of the state, federal government, or other political subdivision of the state;

(iv) a legislative proceeding, including a proceeding of a legislative committee;

(v) a proceeding before an entity that requires by rule that public notice be given before proceedings of such entity;

(vi) a proceeding in or before a managing board of an educational institution supported directly or indirectly from public revenue;

(vii) a proceeding of the governing body of any political subdivision of this state;

(viii) a report of or debate and statements made in a proceeding described by subsection (c)(5)(A)(iii), (iv), (v), (vi) or (vii); or

(ix) a public meeting dealing with a public purpose, including statements and discussions at the meeting or other public issues or issues of public interest occurring at the meeting;

"(B) a communication in connection with an issue under consideration or review by a legislative, executive, judicial or other governmental or official proceeding;

"(C) a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial or other governmental or official proceeding;

"(D) a communication reasonably likely to enlist public participation in an effort to effect consideration of an issue by a legislative, executive, judicial or other governmental or official proceeding; and

"(E) any other communication or conduct that falls within the protection of the right to petition the government under the constitution of the United States or the constitution of the state of Kansas."

20

Greenstein and Anderson rely only on the first and last of these definitions, contending that their email was "[a] communication in or pertaining to: (i) [a] judicial proceeding," and that the general catch-all provision in (E) applies.

Williams counters, as he did above, that the email was not made in connection with a public issue or issue of public interest so it is not protected under the Act's right to petition provision. But unlike the free speech provision, nothing in the Act's petition provision, which we have set out at length above, requires the communication to be made in connection with a public issue or an issue of public interest. See 60-5320(c)(5). Only one of the 13 definitions of the "exercise of the right to petition" includes similar language: a communication in or pertaining to "a public meeting dealing with a public purpose, including statements and discussions at the meeting or other public issues or issues of public interest occurring at the meeting." 60-5320(c)(5)(A)(ix). But Greenstein and Anderson do not rely on that definition of the right to petition.

True, similar language about the public interest is found in the statement of purpose to the Act. It states that the purpose of the Act is to "encourage and safeguard the constitutional rights of a person to petition, and speak freely and associate freely, in connection with a public issue or issue of public interest to the maximum extent permitted by law while . . . protecting the rights of a person to file meritorious lawsuits for demonstrable injury." K.S.A. 2024 Supp. 60-5320(b). Williams seemingly relies on this purpose statement.

Greenstein and Anderson contend Williams errs by reading the statement of purpose's reference to a public issue or public interest into the operative section of the statute. We agree. Although the Kansas Legislature stated in K.S.A. 2024 Supp. 60-5320(b)—the statute's statement of purpose—its concern with petitioning and speaking freely in connection with a public issue or issue of public interest, it does not permit us to read the public issue or interest requirement into the operative section of the petition

21

provision in 60-5320(c)(5), which contains no such requirement. 60-5320(b), (c); see *Navellier v. Sletten*, 29 Cal. 4th 82, 94, 52 P.3d 703 (2002) ("That the Legislature expressed a concern in the statute's preamble with lawsuits that chill the valid exercise of First Amendment rights does not mean that a court may read a separate proof-of-validity requirement into the operative sections of the statute."); Scalia & Garner, Reading Law: The Interpretation of Legal Texts, pp. 56-58 (2012) (noting the supremacy of statutory text and explaining that statutory purpose "sheds light only on deciding which of various *textually permissible meanings* should be adopted").

The Act's petition provisions that Greenstein and Anderson rely on unambiguously omit a prominent requirement that all free speech provisions include—that the communication be made in connection with a public issue or an issue of public interest. Compare K.S.A. 60-5320(c)(5)(A)(i), (E), with K.S.A. 60-5320(c)(4), (d).

> "When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. . . . Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. [Citation omitted.]" *Zaragoza v. Board of Johnson County Comm'rs*, 320 Kan. 691, 699, 571 P.3d 545 (2025).

Because the text of the petition language is clear and unambiguous, we are not bound by the Legislature's intent as generally expressed in the statement of purpose. Although Kansas has not examined the issue, other states have found that declarations of legislative intent in an enactment are devoid of operative effect. See *Redgrave v. Ducey*, 251 Ariz. 451, 457, 493 P.3d 878 (2021) (concluding that if statutory text conflicts with a statement of purpose or intent, "the text must prevail"); *Cronin v. Sheldon*, 195 Ariz. 531, 538, 991 P.2d 231 (1999) ("The preamble [stating legislative purpose and intent] is devoid of operative effect."); *Carolina Beverage Corp. v. FIJI Water Co., LLC*, 102 Cal. App. 5th

977, 990, 321 Cal. Rptr. 647 (2024) (an agreement's recitals cannot override otherwise unambiguous operative provisions).

Thus, as Greenstein and Anderson contend, it is sufficient if the email was "[a] communication in or pertaining to . . . [a] judicial proceeding." K.S.A. 2024 Supp. 60-5320(c)(5)(A)(i). Under that bright-line test, such communications are protected by the anti-SLAPP statute even if no public issue is involved. A communication made in or pertaining to a judicial proceeding thus serves as a proxy for the public issue or interest that the Act requires for protection of free speech communications. Cf. *Area 51 Productions, Inc. v. City of Alameda*, 20 Cal. App. 5th 581, 601, 229 Cal. Rptr. 3d 165 (2018) (the pendency of an issue before a government body is a proxy for its character as public in nature in its anti-SLAPP law).

Still, the communication must be "in or pertaining to" a judicial proceeding. Black's Law Dictionary 1381 (12th ed. 2024) defines "pertain" as: "To relate directly to; to concern or have to do with." This likely requires a closer or more direct relation than the free speech provision's "in connection with" requirement we examined above. See K.S.A. 2024 Supp. 60-5320(c)(4).

Greenstein and Anderson contend that "'filing a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right'" to petition the government for the redress of grievances. *Meyer v. Board of County Comm'rs of Harper County, Okla.*, 482 F.3d 1232, 1243 (10th Cir. 2007). Although Greenstein and Anderson did not file a complaint in the traditional sense of commencing a prosecution, they contend their email pertained to Williams' judicial proceedings and thus is protected under the Act.

True, Greenstein's email was not made in the judicial proceedings that led to Williams being placed on diversion. But that communication directly related to Williams'

23

diversion and his compliance or lack of compliance with conditions of his probation. Diversion agreements inherently arise from and are part of judicial proceedings. See K.S.A. 22-2909(a) (establishing the diversion agreement framework and limitations). And Greenstein sent the email to Williams' probation officer, who has a duty to keep informed about and monitor the probationer's compliance with or violation of his conditions of probation, and to report to the court when a probationer fails to comply with the terms of probation. Greenstein's email attached copies of other judicial proceedings—other diversion agreements—relevant to William's probation. We have no hesitancy in finding that Greenstein's email is protected under the plain language of K.S.A. 2024 Supp. 60-5320(c)(5)(A)(i) as a communication pertaining to a judicial proceeding.

Having found that the email was protected as free speech in connection with a public issue and as a communication pertaining to a judicial proceeding, we need not determine whether it also falls within the "catch all" provision in K.S.A. 2024 Supp. 60-5320(c)(5)(E) for "any other communication or conduct that falls within the protection of the right to petition the government under the constitution of the United States or the constitution of the state of Kansas" and their general First Amendment rights.

Under 60-5320(d), the burden now shifts to Williams to establish a likelihood of prevailing on the claims in his petition by presenting substantial competent evidence to support a prima facie case. But because the district court found that the Act did not protect Greenstein and Anderson's communication, it never determined whether Williams met his burden under 60-5320(d). We thus have no findings to review and must remand the case for the district court to make that determination. See *Dragon v. Vanguard Industries*, 282 Kan. 349, 356, 144 P.3d 1279 (2006).

24

*Attorney Fees*

K.S.A. 2024 Supp. 60-5320(g) requires the court to award attorney fees if a motion to strike is successful. Greenstein and Anderson ask this court to direct the district court to include in its award of attorney fees their costs and fees incurred in this appeal if, on remand, it grants the motion to strike.

We decline to do so. This request is hypothetical, so our opinion addressing this yet to be decided controversy would be an advisory opinion. See *Shipe v. Public Wholesale Water Supply Dist. No. 25*, 289 Kan. 160, 171, 210 P.3d 105 (2009). This court lacks the power to issue advisory opinions. See *Sierra Club v. Stanek*, 317 Kan. 358, 361, 529 P.3d 1271 (2023); *NEA-Topeka, Inc. v. U.S.D. No. 501*, 227 Kan. 529, 532, 608 P.2d 920 (1980) (holding a "court is without constitutional authority to render advisory opinions," because "[s]uch an opinion would go beyond the limits of determining an actual case or controversy and would violate the doctrine of separation of powers"). We thus decline the appellants' request to address fees.

Reversed and remanded for further proceedings.